THE PEOPLE v. OREGON HAMILTON.[1]

*Criminal law — Murder—Information—Amendment—Manslaughter —New trial.*

1. Where an information charged the respondent with murder in the short, statutory form, and on the trial it appeared that the *time* of the killing was stated as of a date three days *prior* to the *death* of the injured party, and it further appearing that the information followed the complaint and warrant as to such allegation, and that the variance appeared on the preliminary examination, which disclosed the fact that death was the result of a series of whippings administered to the deceased, an amendment of the information was properly allowed showing the *true* date of death.

2. Where on the trial of a respondent for the murder of his child his testimony tends to show a want of *malice* and *intent* to kill, and the medical testimony introduced by the people tends

---

[1] Respondent was acquitted on his second trial.

to show, in connection with that of respondent, that the offense committed was of a lower grade than murder, it is error to exclude from the consideration of the jury the idea that the offense might be manslaughter.

3. Where, after the conviction of a father for the murder of his infant daughter by a succession of brutal whippings,—the main witness for the people being a woman who had been hired to care for the child (its mother being dead), and who denied ever whipping it,—a motion was made for a new trial based upon affidavits showing that said witness had been guilty of cruelly beating the child during the time covered by her testimony, a refusal to grant such new trial is error.[1]

Error to Newaygo.  (Palmer, J.)  Argued June 20, 1889. Decided July 11, 1889.

Respondent was convicted of murder in the *second* degree, and sentenced to State prison for life.  Reversed, and new trial granted.  The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*William D. Fuller,* for respondent.

*S. V. R. Trowbridge,* Attorney General, and *George Luton,* Prosecuting Attorney, for the people.

SHERWOOD, C. J.  The respondent was tried in the Newaygo circuit court on an information charging him with murder, and the jury found him guilty of murder in the second degree, and on the twenty-first day of March, 1888, he was sentenced by the court to imprisonment for life.

He was charged, and found guilty, of whipping his little girl, about 19 months old, with his hands and with whips, in such a cruel manner that she died of the injuries thus received.

It is alleged that the whippings occurred between October

---

[1] One of the parties making an affidavit is the nearest neighbor of the witness sought to be impeached, and her name was indorsed on the information as one of the people's witnesses, but she was not sworn.

and the fourth day of December, 1887, and that the child died in convulsions on the seventh day of December.

The record shows the mother of the child died on the twenty-second day of June, 1886, and about six weeks after the child was born.

From the seventh day of August, 1887, the father hired Mary Marston, living in the township of Goodwell, in Newaygo county, to care for and board the child, and with whom she remained until she died. The respondent worked at a place near by Marston's, called Sheridan's mill, and visited the house nearly every evening after he had finished his day's work.

Mary Marston, at the time she kept and cared for the child, lived in a shanty house. She testifies she was a married woman at the time, and that she had never been divorced from her husband, who was still living, and that she was then living with one Eugene Ellsworth, as his concubine. It also appears that these two persons are the main witnesses in the case upon whose testimony the conviction was had.

The record shows that the complaint and warrant upon which the respondent was arrested charged him with the commission of the crime on the fourth day of December, 1887, and upon which charge the examination was had before the magistrate.

The information, as originally drawn, and upon which he was arraigned in the circuit court, and to which he pleaded not guilty *pro forma*, charged the commission of the offense as of that date.

After the jury was empaneled, and the prosecution had offered testimony to prove that the death of the child occurred on the seventh of December, 1887, objection was made by respondent's counsel that the proof offered was not of the offense charged at the time stated in the information, but three days later; that–

"The people seek here to show a series of acts, culminating in the death of the child three days after the time charged in the information."

The prosecuting attorney then asked leave of the court to amend the information by changing the date of the death of the child from the fourth to the seventh day of December, 1887. To this amendment counsel for respondent objected, upon the ground that time was material in the charge as made, and that the respondent had never had a preliminary examination for the offense proposed to be charged by the amendment. It was conceded the preliminary examination disclosed the fact that the child died December 7, 1887.

The circuit court overruled the objection of respondent's counsel, and allowed the amendment to be made. This ruling constitutes respondent's first exception.

The time the crime was committed was stated under a *videlicet* in the information. We think the amendment was properly allowed, under the statute. See How. Stat. §§ 9523, 9534, 9537; *Keator v. People,* 32 Mich. 484; 3 Russ. Crimes, 323, 332, 333; *Dakin's Case,* 2 Saund. 291; *King v. Gillham,* 6 Term R. 265. Time was not of the essence of the offense charged (*State v. Haney,* 67 N. C. 467); nor is it generally, unless made so by the form of the information or indictment.

The respondent could not be misled or his rights prejudiced by the amendment. No further examination was necessary. The material facts were the beating of the child, and the circumstances under which it was done. The question of the exact time was of no essential importance, and no additional evidence was obtained or lost by the change, either upon the examination or upon the trial. The examination really showed the time of the death of the child, and it is from this the prosecuting attorney is supposed to draft his information, and in this case the mistake was more clerical than otherwise, and the amendment was manifestly in

the interest of justice, and without prejudice to any interest of the respondent in the case.

The first three assignments of error all relate to the amendment of the information, and need not be further considered.

The fourth assignment relates to the charge of the court.

The circuit judge charged the jury that under the testimony in the case the defendant could not be convicted of murder in the *first* degree. We think this instruction was correct. There was no testimony showing, or tending to show, that the murder was committed by means of poison, or lying in wait, nor that it was a willful, deliberate, and premeditated killing of the child by the respondent; but, the verdict being in favor of the defendant, this question is no longer in the case.

The court charged the jury that their—

"Verdict should be guilty or not guilty of murder in the second degree."

This charge excluded from the consideration of the jury the idea that the offense might be manslaughter, and this is complained of as error. This charge submitted the case to the jury upon the testimony, and upon that alone, of the people's witness Marston, and failed to submit the case upon the evidence offered by the defendant, tending to show a want of malice and intent to kill the child, and instructed the jury in a manner which entirely ignored this idea. There was some evidence given in the medical testimony of the people's witnesses tending to show, in connection with respondent's own testimony, that the offense committed by him was of a lower grade than that of murder, and we think the respondent was entitled to have it submitted to the jury, as it was a fact for them to find, and the failure of the court to allow the jury to pass upon it was error.

The fifth and last assignment of error relates to the refusal

of the court to allow the defendant a new trial upon the ground of newly-discovered evidence.

The newly-discovered evidence is given in the record, and consists of two affidavits,—one made by Amy Stewart, a near neighbor of the people's witness Marston, and the other by Olive Richards, who was near Marston's house in October, 1887. They both were to the effect that during the months of October and November, 1887, Mrs. Marston was herself guilty of cruel beatings of the little child, in the absence of the respondent, and of inflicting other cruelties upon her; and one of the beatings which Mrs. Stewart swears Mrs. Marston gave the child, was on the fifth day of December, 1887, but two days before her death.

It further appears from the affidavits used upon the motion that these facts were not disclosed to respondent or to his counsel until after the trial. It would appear that the newly-discovered testimony was very important and material to the respondent in making his defense, and especially would it so appear in view of the statements made by Mrs. Marston when upon the witness stand.

The trial occurred during a period of great excitement, and the character of the crime was such as to arouse the prejudices and indignation of the community against the respondent, and while he was confined in jail, and unable to look after or procure such testimony as existed in his favor, if any; and we think that the ends of justice require that he should have had an opportunity to place before a jury the newly-discovered evidence, and to that end the new trial should have been granted by the circuit judge, and that he erred in refusing it.

The judgment, for the errors mentioned, must be set aside, and a new trial granted.

The other Justices concurred.