PEOPLE *v.* JONES

CRIMINAL LAW — DEFENDANT TESTIFYING — IMPEACHMENT — PRIOR
  CONVICTIONS — FAILURE TO PROVE.
  A mistrial was necessary where on cross-examination the prosecu-
    tor repeatedly questioned the defendant, charged with murder,
    regarding prior convictions, the defendant denied that he was
    ever convicted and objected to the line of questioning, and
    the prosecutor failed to prove that the defendant was ever
    convicted of any crime, because the cumulative effect of the
    insinuations and innuendoes of the prosecutor's questions served
    to undermine the defendant's credibility and to destroy his
    defense of accidental killing.

Appeal from Recorder's Court of Detroit, Joseph
E. Maher, J. Submitted Division 1 March 9, 1971,
at Detroit. (Docket No. 9662.) Decided April 1,
1971.

Ora T. Jones was convicted of second-degree mur-
der. Defendant appeals. Reversed and remanded
for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Leonard Meyers,*
Assistant Prosecuting Attorney, for the people.

*Benjamin F. Blake,* for defendant on appeal.

REFERENCE FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence § 1175.
Effect of prosecuting attorney asking defense witness other than
  accused as to prior convictions where he is not prepared to offer
  documentary proof in event of denial. 3 ALR3d 965.

Before: Danhof, P. J., and McGregor and Levin, JJ.

Per Curiam. Defendant was charged with first-degree murder, MCLA § 750.316 (Stat Ann 1954 Rev § 28.548); he was tried before a jury which returned a verdict of second-degree murder, MCLA § 750.317 (Stat Ann 1954 Rev § 28.549). Defendant appeals as of right.

Testimony adduced at the trial showed that on the evening of January 24, 1969, defendant was sitting in the living room of the residence which he shared with the deceased. A female companion of the deceased came to visit and, on the deceased's invitation, the two women entered the kitchen. While they were standing in the kitchen, conversing in a low tone, defendant rose from the couch, went to the closet and took out a shotgun; upon proceeding to the kitchen door, he allegedly aimed the gun at the deceased and the gun discharged, killing her. When the police arrived, the defendant stated something to the effect that he had just done something he should have done a long time ago. The defendant testified at trial that he did not know the gun was loaded and that the gun had accidentally discharged when the deceased's companion had bumped him while she was trying to get out of the kitchen. He stated that he used the gun in an attempt to frighten the companion so that she would leave.

During the trial, the prosecution questioned the defendant regarding any other crimes he may have been arrested for and convicted of, for the purpose of testing his credibility:

"*Q.* (*Mr. Stevens, assistant prosecutor*): You told counsel that you have never been convicted of any crimes, is that correct?

"*A.* (*Defendant*): Right.

"*Q*. Are you sure?

"*A*. Sure.

"*Q*. Never convicted of any crimes?

"*A*. If I have, I don't know the record.

"*Q*. All right.  Your name is Ora T. Jones, is that correct?

"*A*. Yes.

"*Q*. 'T.' for Turner?

"*A*. That's right.

"*Q*. Have you ever been known as Ora Turner Jones?

"*A*. Yes.

"*Q*. Have you ever lived in the Royal Oak Township?

"*A*. Royal Oak Township?

"*Q*. Yes?

"*A*. Yes, I have.

"*Q*. I asked you were you ever arrested and convicted of any crimes?  I am asking you whether you were arrested and convicted of any crimes?

"*A*. No, sir.

"*Q*. I ask you, have you ever been convicted of any crimes in the Royal Oak Township, in 1955?

"*A*. No, sir.

"*Q*. All right.  Have you ever been convicted of any crimes in or around 1960?

"*A*. No, never.

"*Q*. How about September 21st, 1960?

"*A*. 1960?

"*Q*. Yes?

"*A.* No, no convictions.

"*Q.* Pardon me?

"*A.* No convictions.

"*Q.* Were you ever in this court?

"*A.* Never in this court, no.

"*Q.* Not in this building, Recorder's Court?

"*A.* Recorder's Court?

"*Q.* Yes?

"*A.* Yes, I was in Recorder's Court.

"*Q.* Were you convicted in Recorder's Court, 1960?

"*A.* No.

"*Q.* Did you ever go to Plymouth?

"*A.* Yes.

"*Q.* When?

"*A.* About 1960.

"*Q.* Were you sentenced out of this court?

"*A.* Friend of the Court.

"*Q.* Were you sentenced out of this court?

"*A.* I wasn't exactly sentenced.

"*Mr. Roberts* [*For the defense*]: I think the court will take judicial notice that Recorder's Court doesn't handle Friend of the Court matters.

"*The Court:* Just a moment, no, they don't. That is a function of circuit court, and the counsel did not give that answer, that was the witness's answer.

"*Q.* (*By Mr. Stevens, continuing*): Were you ever in Recorder's Court, in Detroit, on September 21, 1960?

"*A.* (*No response*).

"*Q.* Is your answer yes or **no**?

"*A.* I refuse to answer, feeling it will incriminate me.

"*Mr. Roberts:* He answered no.

"*The Court:* Is that his answer?

"*Mr. Stevens:* His is on the record as I heard it.

"*The Court:* Go ahead with your questioning.

"*Q.* (*By Mr. Stevens, continuing*): Well, the record is clear. I'm asking you, on or about the 21st of September, 1960, were you convicted and your answer is no and I have it on the record. Have you been arrested or convicted of anything in 1967?

"*A.* 1967, no.

"*Q.* September 16, 1967?

"*A.* No.

"*Q.* Never?

"*Mr. Roberts:* If the Court please, I'm going to object to this line of questioning.

"*The Court:* The answer is no.

"*Mr. Roberts:* Yes, but your Honor —"

Defense counsel objected and moved for a mistrial, which the court denied after the prosecution promised to produce evidence to substantiate the convictions. No evidence was introduced to establish that the foregoing allegations were true. The insinuations and innuendoes of unproven convictions served to undermine defendant's credibility, and tended to destroy his defense of accidental killing.

Defense counsel refers us to *People* v. *Di Paolo* (1962), 366 Mich 394. There, the people asked whether defendant had ever been convicted of rape; the defendant denied that he had, and the people implied that the denial was contrary to a police record, which was not produced. The Court held that

the failure of the prosecution to establish that the defendant had in fact been convicted of the crime was reversible error:

" 'Q. All right. Now, you testified you had been in Erie, Pennsylvania in 1950, is that correct?

" 'A. Yes, sir.   *   *   *

" 'Q. You also testified you had been convicted of 1 crime, is that correct?

" 'A. Yes, sir.

" 'Q. I will ask you whether or not on the 23rd day of November, 1950, you were convicted of rape in Erie, Pennsylvania?

" 'A. I was not convicted. I, — this is very important to me to make statement about this. I, —

" 'Q. The answer is either "yes" or "no."

" 'A. No, sir.

" 'Q. So if the police records show that, they are wrong?

" 'A. Yes, sir.'

"After some further questions relating to defendant's past conduct counsel again referred to the alleged offense in Pennsylvania, and the following occurred:

" 'Q. You deny the rape in Pennsylvania?

" 'A. No deny. I was find no guilty. No rape.

" 'Q. So if the record shows you were convicted of rape in Pennsylvania, then this record is wrong?

" 'A. Yes, sir.' " *People v. Di Paolo, supra,* 395, 396.

In the instant case, the prosecution repeatedly inquired whether defendant had even been arrested and convicted of any other crimes. The cumulative effect of such innuendoes need not be expounded upon. We find the instant case comes within the interdiction of *People v. Di Paolo, supra,* and requires reversal, with a new trial.

Having reached this conclusion, it is unnecessary to consider the other claims of error advanced by defendant.

Reversed and remanded.