PEOPLE v ORA JONES

Docket No. 54801. Argued June 6, 1974 (Calendar No. 20).—Decided
December 18, 1975. Rehearing denied 396 Mich 976.

Ora T. Jones was charged with second-degree murder and con-
victed by a jury in the Recorder's Court of Detroit, Samuel H.
Olsen, J. The Court specifically instructed the jury on the
elements of second-degree murder and voluntary manslaughter.
The Court of Appeals, Lesinski, C. J., and T. M. Burns and
O'Hara, JJ., affirmed (Docket No. 13881). The Supreme Court
granted leave to appeal to determine whether the judge erred
in not instructing the jury on other offenses. *Held:*

1. There are two classes of included offenses: (a) "necessarily"
included lesser offenses which are such that it is impossible to
commit the greater crime without first having committed the
lesser; and (b) "cognate" lesser offenses which are related to the
greater offense in the sense that they share several elements,
and are of the same class or category, but which may contain
some elements not found in the greater offense. If the lesser
offense is of the same class or category, or closely related to the
originally charged offense, so as to provide fair notice to the
defendant that he will be required to defend against it, the
lesser offense is or may be included within the greater.

2. The evidence will always support conviction of a necessar-
ily included offense if it supports conviction of the greater
offense. In the case of cognate offenses, the evidence adduced at
the particular trial must be examined to determine whether it
would support a conviction of the lesser offense. If evidence has
been presented which would support conviction of a lesser
included offense, refusal to give a requested instruction on the
offense is reversible error.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 326, 327.
[2–6, 9, 10, 12] 21 Am Jur 2d, Criminal Law §§ 185–187, 189, 494–496.
Conviction of lesser offense as bar to prosecution for greater on new
trial. 61 ALR2d 1141.
[7] 40 Am Jur 2d, Homicide §§ 525, 528–530, 533–535.
[8, 15] 40 Am Jur 2d, Homicide § 514.
[11] 21 Am Jur 2d, Criminal Law §§ 152, 153.
[13, 14] 40 Am Jur 2d, Homicide §§ 44, 53, 55.

3. On the evidence presented, the trial court erred in refusing to give the requested instruction on the statutory offense of careless discharge of a firearm (MCL 752.861; MSA 28.436[21]).

4. The trial court erred reversibly in giving on its own motion a misleading instruction on common-law manslaughter which recognized only the prosecution's theory of the case and omitted an instruction on involuntary manslaughter based on the defendant's theory.

5. The evidence would have supported an instruction on the statutory crime of manslaughter resulting from aiming or pointing a firearm intentionally but without malice (MCL 750.329; MSA 28.561), but failure to give it was not reversible error absent a request by defendant.

6. The trial court erred in failing to instruct adequately that an accidental homicide is not murder or manslaughter.

Reversed and remanded for new trial.

Williams, J., concurred but wrote separately to point out a question not present in this case: the information must give notice of a cognate offense either in the original form or, if amendment is possible, in the amended information. If amendment is allowed, there might be such surprise that the defendant should be entitled to an adjournment, or in the extreme the complexion of the case might be so changed that the defendant is denied a fair trial.

Coleman, J., dissented and would affirm the conviction. The interim rule of instructing on offenses "cognate", "related", or "allied" to the crime charge if requested invites increased confusion and should not be adopted because it will only serve to further blur the lines of responsibility in the criminal justice process. The prosecutor determines the initial offense to be charged and not every offense possibly committed during a crime is open to consideration by the jury as an inferior degree of the crime charged. The charge of careless, reckless or negligent use of firearms (MCL 752.861; MSA 28.436[21]) is not a degree of the murder charged within the meaning of the statute allowing the jury to find the defendant guilty of an inferior degree of the crime charged. The defendant was not prejudiced by the failure to instruct on involuntary manslaughter; he did not request the instruction and did not offer argument or proofs on the issue. The jury was adequately instructed on the defendant's theory that the shooting was accidental and the defendant did not request additional instructions.

45 Mich App 373; 206 NW2d 453 (1974) reversed.

Oᴘɪɴɪᴏɴ ᴏғ ᴛʜᴇ Cᴏᴜʀᴛ

1. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ—Pʟᴇᴀᴅɪɴɢ—Iɴᴅɪᴄᴛᴍᴇɴᴛ
   ᴀɴᴅ Iɴғᴏʀᴍᴀᴛɪᴏɴ.

   It is elementary that a defendant may not be convicted of a crime
   with which he was not charged because the Sixth and Four-
   teenth Amendments give a defendant the right to know the
   nature and cause of the accusation against him.

2. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Lᴇssᴇʀ Iɴᴄʟᴜᴅᴇᴅ Oғғᴇɴsᴇs—Pʟᴇᴀᴅɪɴɢ—Dᴜᴇ
   Pʀᴏᴄᴇss.

   One guide to the minimal notice requirements for a lesser in-
   cluded offense in the crime charged is that due process is met if
   the greater charged crime and the lesser offense are of the
   same or of an overlapping nature.

3. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Lᴇssᴇʀ Iɴᴄʟᴜᴅᴇᴅ Oғғᴇɴsᴇs—Pʟᴇᴀᴅɪɴɢ—Dᴜᴇ
   Pʀᴏᴄᴇss—Fᴀɪʀ Nᴏᴛɪᴄᴇ.

   A lesser offense is or may be included within a greater offense if
   the lesser offense is of the same class or category or closely
   related to the originally charged offense so as to provide fair
   notice to the defendant that he will be required to defend
   against it; the fact that a lesser offense within the same
   category as the greater charged offense has an element not
   included in the greater does not preclude the lesser from being
   included in the greater.

4. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Lᴇssᴇʀ Iɴᴄʟᴜᴅᴇᴅ Oғғᴇɴsᴇs—Iɴsᴛʀᴜᴄᴛɪᴏɴs ᴛᴏ
   Jᴜʀʏ.

   The duty of the trial judge to instruct on lesser included offenses
   is determined by the evidence; if evidence is presented which
   would support a conviction of a lesser included offense, refusal
   to give a requested instruction is reversible error.

5. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Lᴇssᴇʀ Iɴᴄʟᴜᴅᴇᴅ Oғғᴇɴsᴇs—Cᴏɢɴᴀᴛᴇ Oғғᴇɴsᴇs.

   A lesser offense within the same category as a greater charged
   offense, which has an element not included within the greater,
   is a cognate offense if analysis of the offenses demonstrates an
   overlapping of elements and a common statutory purpose and a
   cognate offense may be a lesser included offense where the
   evidence adduced at trial would support a conviction of the
   lesser offense.

6. HOMICIDE—LESSER INCLUDED OFFENSES—COGNATE OFFENSES—SEC-
  OND-DEGREE MURDER—CARELESS DISCHARGE OF FIREARMS.

  The offenses of careless, reckless or negligent discharge of fire-
  arms causing death and second-degree murder have certain
  overlapping elements and common statutory purpose: the pur-
  pose is protection against killing or injury to the person and
  the elements relate to a "reckless" state of mind concerning
  damage to human life and an activity or intended activity to
  kill or injure a person; the offenses are cognate and the first is
  a lesser included offense of the second where the evidence
  adduced would support a verdict of guilt of the lesser offense
  (MCL 750.317, 752.861; MSA 28.549, 28.436[21]).

7. HOMICIDE—MANSLAUGHTER—INSTRUCTIONS TO JURY.

  Giving an unrequested instruction to the jury on voluntary
  manslaughter, in a trial for second-degree murder, which recog-
  nized only the prosecution's theory of the case but ignored the
  defendant's theory that the killing was accidental was mislead-
  ing and reversible error.

8. HOMICIDE—ACCIDENT—INSTRUCTIONS TO JURY.

  An instruction to the jury in a trial for second-degree murder
  which mentioned accident in only two places in passing did not
  fairly and fully present the case to the jury in an understanda-
  ble manner where the defense theory was that the victim was
  shot accidentally and whether the shooting was intentional or
  accidental was the central issue in the case (MCL 750.317; MSA
  28.549).

CONCURRING OPINION

WILLIAMS, J.

9. CRIMINAL LAW—LESSER INCLUDED OFFENSES—COGNATE OFFENSES—
  NOTICE.

  *An information must give notice of a cognate offense either in the
  original form or, if amendment is possible, in the amended
  information if the cognate offense is to be considered as a lesser
  included offense of the offense charged on the evidence pre-
  sented.*

10. CRIMINAL LAW—LESSER INCLUDED OFFENSES—COGNATE OFFENSES
  —INFORMATION—AMENDMENT.

  *Amendment of an information to include a lesser cognate offense
  may be allowed by the trial court, but the court should consider
  whether there is such surprise that a defendant should be
  entitled to an adjournment or, in an extreme situation,*

*whether the additional charge so changed the complexion of the case that the defendant would not be permitted to fairly develop his case and defend himself and thus would be denied a fair trial.*

DISSENTING OPINION

COLEMAN, J.

11. DISTRICT AND PROSECUTING ATTORNEYS—CRIMINAL LAW—DECISION TO CHARGE.

*The decision to charge a person with a certain crime is the prosecutor's responsibility; the prosecutor determines the initial charge and the courts may not interfere with the process.*

12. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER OFFENSES.

*A trial judge is responsible for instructing the jury on the elements of the offense charged and on those lesser offenses which are properly for the jury's consideration under the statute permitting conviction of lesser degrees or attempt of the offense charged as determined by the offense charged and the evidence presented; not every offense possibly committed during the crime is covered by the statute (MCL 768.32; MSA 28.1055).*

13. HOMICIDE—SECOND-DEGREE MURDER—DEGREES—CARELESS USE OF FIREARM.

*A charge of careless, reckless or negligent use of firearms is not a lesser degree of second-degree murder which the jury may consider under the statute permitting conviction of lesser degrees or an attempt of the offense charged (MCL 750.317, 752.861, 768.32; MSA 28.549, 28.436[21], 28.1055).*

14. HOMICIDE—SECOND-DEGREE MURDER—INVOLUNTARY MANSLAUGHTER—DEGREES.

*A defendant was not prejudiced by failure to instruct on involuntary manslaughter in the absence of a request for the instruction where the elements of involuntary manslaughter are inconsistent with and even opposite to those of the second-degree murder charged and the proofs presented (MCL 750.317, 768.32; MSA 28.549, 28.1055).*

15. HOMICIDE—INSTRUCTIONS TO JURY—SUFFICIENCY—ACCIDENT.

*An instruction to the jury, in a trial for second-degree murder, in which the defendant maintained that the shooting of the victim was an accident and in which the only two theories advanced were as to "accident" and "intentional killing", in which the*

*judge listed the four classifications of homicide (felonious, justi-*
*fiable, excusable, and accidental) and specifically said that only*
*felonious homicides were punishable, instructed on the ele-*
*ments of the crimes charged and the applicable law, and told*
*the jury that in determining whether the defendant intended to*
*kill the victim they were to examine all of the circumstances*
*and facts of the case as disclosed by the testimony and evidence*
*was a sufficient instruction, and no additional instructions were*
*needed.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Joseph B. Szeremet)* for defendant on appeal.

T. G. KAVANAGH, C. J. Defendant's initial conviction of first-degree murder was reversed by the Michigan Court of Appeals. Upon retrial, defendant was charged with second degree murder· and convicted by a jury of that offense. That conviction was affirmed by the Court of Appeals. *People v Jones,* 45 Mich App 373; 206 NW2d 453 (1973). We granted leave to consider the failure to instruct on lesser included offenses.

Testimony indicated that defendant was sitting in the living room of an apartment he shared with the decedent, Phyllis Grace. A female friend of the decedent came to visit her and, on the decedent's invitation, the two women left the living room and entered the kitchen where they carried on a conversation. After a few minutes, while they were standing in the kitchen, defendant rose from the couch, went to a closet, and removed a shotgun he had stored there. He then proceeded to the kitchen

door where he aimed the weapon at the decedent and the gun discharged, fatally wounding the decedent.

Two police officers called to the scene testified that upon their entering the apartment the defendant made a statement to the effect that "I [have] just done something I should have done a long time ago". This statement was ruled admissible by the trial judge subsequent to a *Walker*-type hearing held during the course of the trial. The defendant denied making such a statement.

The defendant testified that he took the shotgun from a closet and approached the kitchen with the intention of frightening the female companion from the apartment.

He testified that he did not aim the weapon intentionally, that he did not know the weapon was loaded, and that the weapon accidentally discharged when he was bumped by the fleeing female companion.

During both his opening statement and closing argument, defense counsel asserted the shooting was accidental. During his closing argument he also alluded to the fact that the jury might find the defendant guilty of manslaughter rather than murder in the second degree.

The court instructed the jury on murder in the second degree and voluntary manslaughter. Defendant did not object to these instructions.

Subsequent to the giving of these instructions and before the jury retired to consider its verdict, defense counsel requested the trial judge to instruct the jury on the statutory offense of killing or injuring a person by careless, reckless or negligent discharge of a firearm,[1] claiming this was a lesser included offense of second-degree murder.

---

[1] MCLA 752.861; MSA 28.436(21).

The trial judge ruled defendant was not entitled to such a charge and refused the request.

Our disposition of this appeal requires only consideration of the claimed errors in instructing the jury.

We conclude that the trial court erred in the following respects:

1. In refusing to give the requested instruction on the statutory offense of careless discharge of a firearm. MCLA 752.861; MSA 28.436(21).

2. In giving a misleading instruction on manslaughter.

3. In failing to instruct adequately that an accidental homicide is not murder or manslaughter.

We conclude that the trial court did not commit reversible error in failing to instruct on a statutory manslaughter offense, MCLA 750.329; MSA 28.561, not requested by defendant.

I

In *People v Henry*, 395 Mich 367; 236 NW2d 489 (1975), we held that a trial court is not ordinarily required to instruct on lesser included offenses unless request for those instructions is properly made.

In the case at bar, defense counsel requested instructions on the offense of reckless use of firearms causing death. The trial judge refused the request, stating that reckless use of firearms was not a lesser included offense of second degree murder.

The law of lesser included offenses in Michigan has not been clear or consistent:

"The case law is not in agreement as to either the elements of the various crimes or the lesser offenses,

and there tends to be a stratification of law along the lines of individual crimes, so that in one instance, instructions on lesser offenses are routinely given sua sponte, whereas in other crimes they are rarely if ever given sua sponte, although both crimes are equally susceptible to lesser offenses." Koenig, *The Many-Headed Hydra Of Lesser Included Offenses: A Herculean Task for the Michigan Courts,* 1 DCL Rev 41, 42 fns 3, 4 (1975).

The common-law definition of lesser included offenses is that the lesser must be such that it is impossible to commit the greater without first having committed the lesser. 4 Wharton, Criminal Law and Procedure, § 1799. This definition includes only *necessarily* included lesser offenses. This definition, however, is generally conceded to be unduly restrictive, and thus most jurisdictions, including Michigan, have statutes that are broadly construed to permit conviction of "cognate" or allied offenses of the same nature, under a sufficient charge.[2] These lesser offenses are related and hence "cognate" in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense.

"The practical differences become evident when one considers an indictment containing allegations of facts which are extraneous to the basic offense on which defendant is to be tried, but which *are* essential elements of some lesser 'cognate' offense." Comment, *Jury*

---

[2] Indeed, the Federal rule concerning lesser included offenses specifically limits the requirement to charge to "necessarily included" lesser offenses. FR Crim P, 31 (c). Nevertheless, as the Ninth Circuit recognized in *Olais-Castro v United States,* 416 F2d 1155 (CA 9, 1969): "There is a difference between an offense 'necessarily-included' and a 'lesser-included' offense, but the terms are used interchangeably by the courts: It seems to be recognized that Rule 31 (c) covers lesser-included offenses as well as necessarily-included offenses."

Instructions On Lesser Included Offenses, 57 Nw U L Rev 62, 63 (1962).

It is elementary that a defendant may not be convicted of a crime with which he was not charged. *DeJonge v Oregon*, 299 US 353; 57 S Ct 255; 81 L Ed 278 (1937). The reason is apparent: The Sixth and Fourteenth Amendments give a defendant the right to know the nature and cause of the accusation against him.[3]

Thus, while there is comparatively little difficulty with the necessarily included lesser offenses, the cognate lesser included offenses are somewhat more difficult to ascertain, conceptually as well as practically. One guide to the minimal due process notice requirements in this area was set out in *Paterno v Lyons*, 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948), wherein the Court said that due process notice requirements are met if the greater charged crime and the lesser included offense are of the same or of an overlapping nature.[4]

While the distinction between cognate and necessarily included lesser offenses is helpful in analyzing the subject of lesser included offenses, the distinction has largely disappeared.

If the lesser offense is of the same class or category, or closely related to the originally charged offense, so as to provide fair notice to the defendant that he will be required to defend against it, the lesser offense is or may be included within the greater.

The failure to advert to the nature of the "cognate" lesser included offense has caused confusion. The fact that a lesser offense, within the same

[3] *See People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975).

[4] In *Paterno*, a plea-based conviction for attempted larceny, upon an original charge of receiving stolen property, was held not to be a denial of due process.

category as the greater charged offense, has an element not included within the greater does *not* preclude the lesser from being included within the greater. This rule was enunciated in Michigan in 1861 in *People v McDonald,* 9 Mich 150 (1861), where the Court stated that a defendant indicted for assault with intent to commit murder could be convicted of "an assault, or assault and battery only. Upon a charge for felonious assault, the lesser offense of an assault, or an assault and battery is, under our statutes, included". 9 Mich at 153.[5] Of course under a strict *"necessarily* included" test, an assault and battery offense would not be included, as battery is an element not required for the higher assault with intent to murder offense. Thus, although we recognized the broader definition in 1861, we have not followed it with consistency, with the result that different theoretical definitions have been followed which have led to different results.

While it is true that reckless discharge of a firearm causing death is not *always* a lesser included offense of second-degree murder, *e.g.,* if the killing were done by stabbing, it *may be* such a lesser included offense, as it was in the case at bar.

Analysis of the offense charged (second-degree murder), and the lesser offense on which instruction was requested (careless, reckless, or negligent discharge of a firearm causing death), demonstrates the overlapping of certain elements and common statutory purpose. The common purpose is the protection against killing or injury to the person. The overlapping elements relate first to a "reckless" state of mind concerning damage to

[5] The *McDonald* case itself dealt with a jury verdict of guilty of assault and battery upon an information charging assault with intent to rape, but the language of the information also alleged a "beat-[ing]". 9 Mich 150 (1861).

human life and secondly to an activity or intended activity to kill or injure a person. Both of these overlapping elements relate to the common purpose of the statutes, *i.e.,* to protect against killing or injury to the person. The offenses are cognate; the elements shared by the two offenses coincide in the harm to the societal interest to be protected.

The duty of the trial judge to instruct on lesser included offenses is determined by the evidence. *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971). If evidence has been presented which would support a conviction of a lesser included offense, refusal to give a requested instruction is reversible error. *Id.* at 36. *People v Hamilton,* 76 Mich 212; 42 NW 1131 (1889).

If the lesser offense is one that is necessarily included within the greater, the evidence will always support the lesser if it supports the greater.

In the area of "cognate" lesser offenses, the evidence in each case adduced at the particular trial must be examined to determine whether that evidence would support a conviction of the lesser offense. In the case at bar, the evidence was undisputed that the killing resulted from a shotgun blast. The defendant claimed that the blast was accidental.

Because the evidence adduced at trial would have supported a guilty verdict on the offense of careless, reckless or negligent discharge of firearms causing death, the trial court was required to accede to defendant's request to instruct the jury that such offense was a lesser included offense of the charge of second-degree murder.

## II

There were no requests by counsel for instruc-

tions on manslaughter. The court, nevertheless, instructed the jury that they could find defendant guilty of manslaughter, though the language used covered only voluntary manslaughter. The judge instructed as follows:

"Voluntary manslaughter is the unlawful, intentional killing of another without malice, but where the killing is done under some great provocation before the passions have had time to subside, and the blood to cool.

"Whether or not there is a legally sufficient provocation in this case is a question of fact for you to determine from a consideration of all the testimony and the evidence in this case.

"Before you can find the defendant guilty of manslaughter, you must find that the people have established each and every one of the following elements beyond a reasonable doubt:

"First, that the defendant unlawfully, intentionally killed Phyllis Grace.

"Second, that this was a killing without malice either express or implied, but the defendant was acting under a great provocation, as the court has defined that term.

"Third, that the defendant committed the crime on July 24, of 1969.

"And fourth, that the crime was committed by the defendant in the City of Detroit, Wayne County, State of Michigan.

"If you find that the people have established each and every one of these elements beyond a reasonable doubt, you must find the defendant guilty of manslaughter.

"On the other hand, if the people have failed to establish all of these elements beyond a reasonable doubt as I have defined that term, you must find the defendant not guilty of manslaughter."

Defendant alleges that the above quoted instruction was erroneous and prevented the jury from considering either involuntary manslaughter or the statutory offense of manslaughter resulting

from a firearm pointed intentionally but without malice.[6]

In *People v Townes,* 391 Mich 578, 590–591; 218 NW2d 136 (1974), this Court discussed the necessary elements of voluntary and involuntary manslaughter:

"A defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder. *People v Younger,* [380 Mich 678; 158 NW2d 493 (1968)] *supra,* 681–682; *People v Droste,* 160 Mich 66, 79; 125 NW 87 (1910); *People v Bucsko,* 241 Mich 1, 3; 216 NW 372 (1927).

"The elements of involuntary manslaughter, although not completely exclusive of those found in voluntary manslaughter are distinguishable in several respects. They define a crime that originates out of circumstances often quite different from those found in voluntary manslaughter and apply to a defendant who did not proceed with the intent to cause death or serious bodily injury. In the leading case of *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923), the Court approved the following definition of involuntary manslaughter:

" ' "Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." '

"The usual situations in which involuntary manslaughter arise are either when death results from a direct act not intended to produce serious bodily harm, *People v Carter,* 387 Mich 397, 419; 197 NW2d 57 (1972), *People v Austin,* 221 Mich 635, 643–645; 192 NW 590 (1923), or when death results from criminal negligence. *People v Stubenvoll,* 62 Mich 329; 28 NW 883 (1886); *People v Townsend,* 214 Mich 267; 183 NW 177; 16 ALR 902 (1921)."

---

[6] MCLA 750.329; MSA 28.561.

Appellant contends that confronted with a manslaughter instruction expressly limited to only the voluntary type the jury was precluded from finding manslaughter based on defendant's theory of the facts.

We agree.

The prosecutor claimed intentional shooting, the defendant maintained it was accidental. The jury was not obliged to accept either theory but could have concluded that the killing was the result of criminal negligence, *e.g.,* involuntary manslaughter. Had the judge not instructed at all on manslaughter, there would be no reversible error, because no request for instruction on manslaughter was made. See *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975).

Having undertaken to do so, however, it was reversible error to give a misleading instruction which recognized only the prosecution's theory but not the defendant's.

Michigan has a statutory definition of manslaughter which defendant alleges fits the facts of this case and on which an instruction should have been given. MCLA 750.329; MSA 28.561 provides:

"Any person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter."

We agree that on the evidence presented in this case the trial court would have been required if requested to instruct on this offense.

Since no such instruction was requested, there was no reversible error in failing to give it. *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975).

III

The defense theory was accidental shooting. The trial court's instruction did not adequately present this to the jury. The only places in the instruction which touched directly upon the theory of accident were two: In defining homicide the court said:

"Members of the jury, the word homicide means the killing of one human being by another human being.

"Homicides in turn are divided into a number of classifications or degrees: felonious homicides, excusable homicides, justifiable homicides, or accidental homicides.

"It is only felonious homicides, members of the jury, that are punishable by statute in Michigan."

and in defining "wilfully" the court said:

"It means a wrongful criminal act done intentionally as opposed to an act done accidentally."

The court did not instruct the jury that if the jury found the shooting was accidental it should find the defendant not guilty. While a logician or one skilled in the law could have gleaned such a rule from the instructions given, we are not satisfied that the instructions fairly and fully presented the case to the jury in an understandable manner. Whether the shooting was intentional or accidental was the central issue in the case and read as a whole these instructions did not direct the jury's attention to this issue.

Reversed and remanded for new trial.

WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred with T. G. KAVANAGH, C. J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

WILLIAMS, J. *(concurring).* I concur with the majority opinion, but would make an additional comment. Since the information here arguably covered the elements of the cognate offense, the following question does not arise in this case, but I believe because of its relevance should be spoken to. I am concerned that the information must give notice of the cognate offense either in the original form or, if amendment is possible, in the amended information. If amendment is allowed, I would further be concerned whether or not there was such surprise that defendant should be entitled to an adjournment or, in an extreme situation, the court might feel that the charge so changed the complexion of the case that the defendant would not have been permitted to fairly develop his case and defend himself and thus would be denied a fair trial.

COLEMAN, J. *(dissenting).* The definitions and the array of possible components of "lesser included offenses" of the one(s) charged have fueled many appellate confrontations in Michigan. This is not surprising as courts have interpreted a jerry-built system of statutory criminal laws in an inconsistent manner.

It was our purpose to provide some uniformity and direction in nine simultaneously released opinions.

Although I agree with some of those decisions, I believe the theory of lesser included offenses adopted in this case will only serve to further blur the lines of responsibility in the criminal justice process.

My colleagues define "lesser included offenses" as necessarily included offenses plus "cognate",

"related" or "allied" offenses. The latter may "contain some elements not found in the higher offense".

They say with truth that "while there is comparatively little difficulty with the necessarily included lesser offenses, the cognate lesser included offenses are much more difficult to ascertain, conceptually as well as practically".

A glance at this twice tried, three times[1] appealed case illustrates the problems we would visit upon bench and bar.

Two divergent lines of testimony were presented:

1. The eyewitness said defendant stood in the kitchen door raised the gun to his shoulder with his finger on the trigger, aimed it at decedent and pulled the trigger, killing her. The witness said she saw the shot hit decedent. Defendant then told her to "get the hell on out".

a. The first policeman to arrive at the scene quoted defendant as saying, "I have done something I've been wanting to do for a long time."

b. The eyewitness' son said defendant told him to call the police because he had killed his wife.

c. A doctor testified that decedent's wound was parallel to the place of entry, indicating that the shotgun had been raised to at least head level.

2. Defendant claimed the gun was held down by his side, that he neither loaded it nor aimed it and he did not remember his finger being on the trigger. He said he took the shotgun from the closet to frighten the female guest away. He testified that he merely stood with his back against one side of the kitchen door frame with the gun held at his side. Defendant said the guest rushed by him, bumped him and moved him around so that the gun slammed against the door

---

[1] 32 Mich App 309; 188 NW2d 190 (1971), reversed the conviction and remanded for new trial. 45 Mich App 373; 206 NW2d 453 (1973) affirmed the second conviction.

frame, discharged and killed his wife. His sole claim during trial was that he had done nothing. It was an accident.

a. Defendant denied making remarks to either the officers or to the guest's son.

The information charged that the defendant:

"[W]illfully, feloniously, maliciously, and with a design to effect the death of one Phyllis Grace, did kill and murder the said person with a shotgun said act not being justifiable or excusable but without premeditation or deliberation."

The jury was specifically instructed on the elements of second-degree murder and voluntary manslaughter.

Following the charge, defendant's counsel orally requested an instruction on the misdemeanor offense of careless, reckless or negligent discharge of a firearm. The judge denied this request saying that there was no evidence to support the giving of such instruction.

The decision to charge an individual with a certain crime is the prosecutor's responsibility. We have held that the courts may not interfere with this process. See *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972), and *People v Curtis,* 389 Mich 698; 209 NW2d 243 (1973).

After the crime is charged and a trial held, MCLA 768.32; MSA 28.1055 permits the jury to consider other offenses:

"Upon an indictment for any offense, consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offense in the degree charged in the indictment and may find such accused person guilty of any degree of such offense,

inferior to that charged in the indictment, or of an attempt to commit such offense."

The jury is not free to convict for any felony or misdemeanor. The statute only permits consideration of degrees (or an attempt) of the offense charged.

The *Genesee Prosecutor* decision recognized these two points: the prosecutor determines the initial charge and not every offense possibly committed during the crime is covered by MCLA 768.32:

"For an offense to be lesser included it must contain some, but not all of the elements of the higher offense and there must be no additional elements in the 'included' offense which are not a part of the 'higher' offense. The supposed 'lesser' offense here requires proof of driving away the automobile but proof of 'driving away' is not required of the prosecution to secure a conviction of unlawful possession of a motor vehicle known to be stolen. Although related, the two offenses are separate and distinct and the prosecutor has discretion to proceed under one or the other or both, if warranted by the facts. *People v Morton,* 16 Mich App 160 [167 NW2d 834] (1969), reversed on other grounds, 384 Mich 38 [179 NW2d 379] (1970); see also *People v Kruper,* 340 Mich 114, 121–122 [64 NW2d 629] (1954)." *Genesee Prosecutor, supra,* at 684.

The trial judge is responsible for instructing the jury on the elements of the offense charged.[2] He or

---

[2] In *People v MacPherson,* 323 Mich 438; 35 NW2d 376 (1949), the Court reversed defendant's conviction because the instructions omitted an element of the offense charged. The trial court had a duty to detail accurately "the elements of an offense, and what must be proved in order to establish such elements". (p 448.) The Court said at 452:

"Subject to the exception recognized when a fact is not in dispute and is established by competent proof beyond any reasonable doubt, it is the duty of the trial court in a criminal case to indicate to the jury with reasonable certainty the offense with which the defendant is

she should instruct on those offenses which are properly for the jury's consideration under MCLA 768.32. These should be determined by reference to the offense charged and the evidence presented.

Defendant says the judge erred by not instructing the jury on the misdemeanor charge of careless, reckless or negligent use of firearms (requested orally), on involuntary manslaughter (not requested) and on manslaughter resulting from a firearm pointed intentionally but without malice (not requested, so not required). See *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975). There also is a question raised first in this Court concerning the adequacy of the judge's instructions relating to the defense of accident.

## I

MCLA 752.861; MSA 28.436(21) lists the ele-

___

charged. As we said in *People v Ring,* 267 Mich 657, 661 [255 NW 373 (1934)] (93 ALR 993):

" 'The office of the charge is to apprise the jury of the questions involved and the rules of law applicable thereto.' "

The Court specifically noted it was dealing with a charge defining the elements of the offense. Similar is *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973).

The instructions were the basis for a reversal in *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967). The Court listed these principles at 714:

"It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to establish the offense, even in the absence of request. A case may be reversed because the charge omits a legally essential ingredient. *People v Prinz,* 148 Mich 307 [111 NW 739 (1907)]; *People v Kanar,* 314 Mich 242, 254 [22 NW2d 359 (1946)]; *People v Hearn,* 354 Mich 468 [93 NW2d 302 (1958)]. Similarly, without a request, a case may be reversed because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point. *People v MacPherson,* 323 Mich 438, 448 *et seq.* [35 NW2d 376 (1949)]; *People v Guillett,* 342 Mich 1, 7 [69 NW2d 140 (1955)]; *People v Oberstaedt,* 372 Mich 521, 526 [127 NW2d 354 (1964)]. Defendant has a right to have a properly instructed jury pass upon the evidence. *People v Visel,* 275 Mich 77, 81 [265 NW 781 (1936)]."

The conviction was reversed because the trial court at least 11 times incorrectly identified the two defendants.

ments of a charge of careless, reckless or negligent use of firearms (CRNUF):

"Any person who, because of carelessness, recklessness or negligence, but not wilfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a *misdemeanor,* punishable by imprisonment in the state prison for not more than 2 years, or by a fine of not more than $2,000.00 or by imprisonment in the county jail for not more than 1 year, in the discretion of the court." (Emphasis added.)

Checking these elements against those charged, we find no common factors excepting the use of a firearm and a killing. In addition, the crime described in MCLA 752.861 contains elements not appearing in the proofs or arguments (carelessness, recklessness, negligence) of defendant and not included in the murder charged. Although involving a firearm, the offenses are otherwise separate and distinct. A charge of CRNUF is not a degree of the murder charged within the meaning of MCLA 768.32.

An instruction permitting the jury to consider the offense could have infringed the prosecutor's right to decide what crime is to be charged. MCLA 752.861 was available and could have been used. The prosecutor decided the facts demanded a charge of second-degree murder. Defendant should not be permitted to circumvent that decision by asking the court to instruct on offenses which *might have been* charged. Because of possible denial of due process and fundamental fairness, we do not permit courts to do this *sua sponte* or upon the prosecutor's recommendation. It is also repugnant to a fair and orderly process to permit de-

fendant to require an instruction so vaguely related to the initial charge and in this case without proofs of (or even arguments about) essential elements.

Upon adoption of the majority's version of this "cognate", "related" or "allied" lesser included offense theory, we may expect on another similar occasion such requested instructions (among others) as:

| MCLA | MSA | |
|------|-----|---|
| 750.316 | 28.548 | First-degree murder |
| 750.317 | 28.549 | Second-degree murder |
| 750.321 | 28.553 | Manslaughter (voluntary and involuntary) |
| 750.329 | 28.561 | Manslaughter resulting from a firearm aimed or pointed intentionally but without malice |
| 750.83 | 28.278 | Assault with intent to murder |
| 750.91 | 28.286 | Attempt to murder other than assault |
| 750.84 | 28.279 | Assault with intent to do great bodily harm |
| 750.86 | 28.281 | Assault with intent to maim or disfigure |
| 750.82 | 28.277 | Assault with dangerous weapon (felonious assault) |
| 752.861 | 28.436(21) | Careless, reckless or negligent use of firearms |

There also could be eight or nine misdemeanors other than CRNUF under this theory were it not for the line drawn at a maximum penalty of "one year or less" this day in *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975). I do not dispute the practicality of this ordained limit, although the logic is incomplete.

## II

Issues not preserved in the trial court are brought to and heard by this Court. There are substantial reasons in the statutes, in the court rules, in the case law and in common sense for this Court to decline to hear such issues.

MCLA 768.29; MSA 28.1052 reads in part:

"The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

GCR 1963, 516.1 and 516.2 read in part:[3]

".1 Request for Instructions. At or before the close of the evidence, any party may, or at any time the court reasonably directs, the parties shall, file written requests that the court instruct the jury on the law as set forth in the request. * * * The court may make such comments on the evidence, the testimony, and the character of the witnesses as in its discretion the interests of justice require.

".2 Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Honigman & Hawkins say the purpose of instructions "is to explain the issues and the legal princi-

---

[3] *See* GCR 1963, 785.1 making these applicable to criminal trials.

ples applicable to the facts in issue". By providing for requests and requiring objections, the rules establish "the foundation for appeal as to alleged errors in jury instructions". Unobjected-to errors and failure to give an unrequested instruction will not be cause for reversal unless we are convinced that the error or omission has so damaged the integrity of the proceedings that the conviction cannot be permitted to stand.

The trial judge instructed the jury on the elements of second-degree murder and voluntary manslaughter. He did not instruct on involuntary manslaughter. No request for such instruction was made and no argument or proofs were offered by defendant.

MCLA 750.321; MSA 28.553 reads:

"Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court."

The statutes do not define manslaughter. Our courts have based their interpretation upon the common law versions of "voluntary" and "involuntary" manslaughter.[4]

---

[4] In *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), this Court discussed the necessary elements of voluntary and involuntary manslaughter:

"A defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder. *People v Younger,* [380 Mich 678; 158 NW2d 493 (1968)] *supra,* 681–682; *People v Droste,* 160 Mich 66, 79; 125 NW 87 (1910); *People v Bucsko,* 241 Mich 1, 3; 216 NW 372 (1927).

"The elements of involuntary manslaughter, although not completely exclusive of those found in voluntary manslaughter are distinguishable in several respects. They define a crime that originates out of circumstances often quite different from those found in voluntary manslaughter and apply to a defendant who did not proceed with the intent to cause death or serious bodily injury. In the leading case of

Defendant was not prejudiced by the lack of an instruction on involuntary manslaughter. Such an instruction was not appropriate. The elements are inconsistent with and even opposite to those of the crime charged in this case or the evidence before the jury. Elements not included in the murder charge, such as criminal or gross negligence, or the negligent omission to perform a legal duty, or an unlawful act not amounting to a felony nor normally tending to cause death, would have to be proved to sustain involuntary manslaughter. Involuntary manslaughter is not a degree of the murder charged within the meaning of MCLA 768.32.

As in *Genesee Prosecutor,* "the two offenses are separate and distinct and the prosecutor has discretion to proceed under one or the other or both, if warranted by the facts". The prosecutor elected to charge second-degree murder. The prosecutor elected not to charge involuntary manslaughter because neither version of the incident provided the necessary factual basis. The prosecutor's exercise of discretion should not be disturbed.

## III

If an accused requests proper instructions on a

*People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923), the Court approved the following definition of involuntary manslaughter:

" ' "Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." '

"The usual situations in which involuntary manslaughter arise are either when death results from a direct act not intended to produce serious bodily harm, *People v Carter,* 387 Mich 397, 419; 197 NW2d 57 (1972), *People v Austin,* 221 Mich 635, 643–645; 192 NW 590 (1923), or when death results from criminal negligence. *People v Stubenvoll,* 62 Mich 329; 28 NW 883 (1886); *People v Townsend,* 214 Mich 267; 183 NW 177; 16 ALR 902 (1921)."

defense the trial court is obligated to grant the request if the evidence supports such charge. The jury should be then instructed as to the nature of the defense and the law applicable to the defense.[5]

No such request was made in this case. Defendant only raises the instruction as an issue on appeal to this Court. I am persuaded that the defense perceived no viable issue because the jury could not have been misled.

Throughout the trial, from opening statement through closing statement, defendant maintained that the shooting was an accident. In fact the only two theories advanced and the only supportive proofs were as to "accident" or "intentional killing".

Proceeding into his instructions to the jury, the trial judge listed the four classifications of homicide—felonious, justifiable, excusable and accidental. He specifically said that only felonious homicides were punishable. All elements of the crimes charged were given to the jury, as was the applicable law. To determine whether defendant intended to kill Phyllis Grace, the jury was to "examine all of the circumstances and facts of the case as disclosed by the testimony and evidence of the case". If the jury was not persuaded beyond a reasonable doubt that defendant had an intent to kill, it would have to return a verdict of innocent. There was no request and no need for additional instructions.

---

[5] *See People v Coston,* 187 Mich 538; 153 NW 831 (1951), and *People v Miller,* 250 Mich 72; 229 NW 475 (1930). The Court in *People v Hoefle,* 276 Mich 428; 267 NW 644 (1936), said that the trial court has a duty "if proper request is made to cover in the charge to the jury the theory upon which the defense is founded, if it is supported by competent testimony". (p 431.) *Also see People v Lane,* 304 Mich 29; 7 NW2d 210 (1942), and *People v Welke,* 342 Mich 164; 68 NW2d 759 (1955).

CONCLUSION

The majority has stated that it is our intention to adopt a court rule clarifying lesser included offenses. Until that time, judges will be required to give only requested appropriate instructions as to those offenses (excepting in first-degree murder cases). See *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975).

I find merit in that opinion, but disagree with the interim theory of what is appropriate if requested.

The "cognate", "related", or "allied" lesser offense (it is not in reality "included") theory as here presented conjures up visions of increased rather than diminished confusion.

It invites appeals because of its formlessness. It blurs the roles of prosecutor, judge and defense counsel. If not contrary to our statutes, it adds a new act or section to the existing legislation.

It threatens due process as to defendant and fundamental fairness as to the people in the preparation and presentation of the case.

Unless the tendencies of past history are altered, we can anticipate in some cases a result opposite that desired by my colleagues. Considering the number of offenses by our definition "related" or "allied" to this or other major crimes, juries presented with foreseeable smorgasbords of possibilities conceivably will return unjustifiable verdicts of guilty.

In my opinion, the theory adopted today neither promotes the efficient and careful operation of the criminal justice system nor is likely to result in a fairer trial for the defendant.

Defendant received a fair trial and the process was not violated. I would affirm the conviction.

ADDENDUM, December 18, 1975: The prevailing

opinion was changed at this time to try further to define "cognate" offenses. My objections basically remain, so the dissent is submitted as originally written.