PEOPLE *v.* COSTON.

1. EVIDENCE—CRIMINAL LAW—RAPE—COMPLAINTS.
    On the trial of a respondent charged with statutory rape, the prosecutrix was properly allowed by the court to explain ' why she had not made complaint to her parents.

2. SAME—PREVIOUS RELATIONS.
    It was competent to permit her to testify to previous acts of intercourse with the accused.

3. SAME—WITNESSES—COMPLAINTS.
    But her sister who witnessed acts of intercourse could not offer an explanation why she had not disclosed her sister's delinquency to her parents.

4. SAME—OTHER OFFENSES.
    The admission of testimony of the said witness, who was under the statutory age of consent, that she had had intercourse with respondent was erroneous and prejudicial; but her statements relative to acts of familiarity of prosecutrix with respondent were admissible in evidence.[1]

5. SAME—EXPERTS.                                          .
    The court also erred in excluding from the jury the opinion of a medical witness offered by respondent whether or not a man of respondent's age, *i. e.*, 75 years, and with a weak back and other ailments, could have committed the offense under the circumstances detailed by the victim.[2]

6. SAME—CROSS-EXAMINATION—PHYSICAL DISABILITY—IMPOTENCY.
    Liberal rules should be applied in the examination of such respondent touching his ability to have intercourse.

7. SAME—TRIAL—INSTRUCTIONS.
    The respondent was warranted in attempting to establish an alibi at the time that the prosecution elected to prove the commission of the offense.

8. SAME—CROSS-EXAMINATION—SETTLEMENT.
    The State was also correctly allowed on cross-examination

---

[1] As to evidence of other crimes in prosecution for rape, see notes in 62 L. R. A. 314, 322, 329; 48 L. R. A. (N. S.) 236.

[2] As to impotency or senility as defense to prosecution for rape or assault with intent to commit rape, see note in L. R. A. 1915 B. 131.

of respondent to show the amount which he paid the mother of complainant in an alleged settlement of the wrongful act, his testimony on direct examination having brought out the fact that her mother had demanded a money settlement.

Error to Muskegon; Sullivan, J. Submitted June 17, 1915. (Docket No. 102.) Decided July 23, 1915.

Lafayette R. Coston was convicted of assault with intent to commit rape. Reversed.

*Harris E. Galpin,* Prosecuting Attorney, and *Christian A. Broek,* Assistant Prosecuting Attorney, for the people.

*R. J. Macdonald* and *Harry W. Jackson,* for respondent.

Under an information charging defendant with statutory rape upon the person of one Ida Hopper, 14 years of age at the time of the commission of the alleged offense, defendant was convicted of the lesser and included crime of an assault with intent to commit rape.

The complaining witness gave evidence tending to show that between 3 and 4 o'clock on the afternoon of July 6, 1914, she, together with her mother and older sister Anna, were picking cherries upon the premises of the defendant; that having filled her basket with cherries she repaired to the barn, where the defendant was engaged in packing the fruit for the market; that, arrived in the barn, the defendant laid hold of her, taking her into an unused coal bin located in one end of the barn, where, despite her protests and struggles to free herself, he succeeded in throwing her down and having sexual intercourse with her. She was permitted to testify, over objection, to other acts of intercourse with the defendant occurring at inter-

vals of about one week for a period of nearly two years prior to the date of the offense counted upon in the information. Having testified that she made no outcry at the time of the alleged occurrence, and told neither her father nor her mother of what had happened immediately after the occurrence, she was permitted, over objection, to give her reasons for not disclosing the alleged facts to her parents.

The prosecution then placed upon the stand her elder sister, Anna Hopper, who gave testimony tending to show that upon several occasions prior to April, 1914, she had been present when the defendant had had sexual intercourse with her younger sister Ida, the complaining witness. Over objection this witness was permitted to testify that prior to April, 1914, she herself had upon more than one occasion had sexual intercourse with the defendant in the same place where the offense charged was alleged to have been committed.

The information under a *videlicet* charged the offense to have been committed upon the 8th day of July. The complaining witness fixed the date as "a little after the 4th of July." The witness Anna fixed the date positively as Monday, July 6th.

Defendant was sworn in his own behalf and denied absolutely having ever had sexual intercourse with the complaining witness. On direct examination the following occurred:

"*Q.* When did you first hear of this complaint that is alleged against you?
"*A.* What day?
"*Q.* Yes. What was that day—what day and what month.
"*A.* Well, it was the 26th or 27th of August, I think. It was the day before my son-in-law went away, and I think he went on the 27th.
"*Q.* And who did you learn it from?
"*A.* I learned it over the phone.

"*Q.* Over the phone?

"*A.* Yes, sir.

"*Q.* Did you have any conversation with Mrs. Hopper in the presence of her daughter Ida, after that time?

"*A.* Yes, sir; the next day I think it was.

"*Q.* What did they want?

"*A.* Why, they wanted a settlement. They wanted me to settle with them.

"*Q.* They wanted money?

"*A.* Yes, sir."

Upon cross-examination the prosecution was permitted, over strenuous objection, to inquire into the details of a conversation testified to by the defendant, and to show that, as a result of such conversation, the defendant had paid to the mother of the complaining witness the sum of $1,000. After having received defendant's version of what occurred at the time of the payment of said sum, the prosecution was permitted, also over objection, to introduce testimony tending to contradict many of defendant's statements as to what occurred at the time the money was paid.

Defendant gave evidence tending to show that, at the time of the commission of the alleged offense, he was upwards of 75 years of age; that he had suffered from a lame back for years; had been afflicted with a double hernia for about 30 years; that he wore a double truss, with which he endeavored to hold the hernias in position; that he was unable to stoop; and that any sudden movement would cause the hernias to escape from the truss. Further examination as to the physical condition of the defendant was prohibited by the trial judge and an exception taken.

Defendant called as an expert a physician and surgeon of 18 years' experience, to whom the following questions were propounded:

"*Q.* Would it be possible for a man of 75 years of age, suffering from a weak back and a double hernia or rupture and wearing at the time a double truss,

which would be liable to slip or be moved from coughing, sneezing, a quick movement, stooping over, or lifting, and who for 10 years prior to the death of his wife, now deceased, had not consummated the marriage relation, and for that time—for that length of time had been free from sexual passions or desire, and who for 3 minutes struggled with a girl 14 years of age, so as to force her into a position where he could have intercourse with her, what would you say as to his capacity, having had to exert his strength over this 14-year-old girl to place her in this position, what would you say, in your opinion as a physician and surgeon, would be his capacity to consummate intercourse with her at that time and immediately upon that struggle?

"Q. This man, 75 years of age, has a double truss on, and the girl, of 14 years of age, wouldn't it be necessary for that man, with a weak back, a continued weak back, as it appears in this case, wouldn't it be necessary for him to have consent and freedom upon the part of the girl and help to have that intercourse?"

The court excluded the questions, and the following occurred:

"The Court: I have sustained the objection.

"Mr. Macdonald: I was just adding to my question. I want this record—

"The Court: I think you have made it.

"Mr. Macdonald: Well, it is for me to make it, Judge.

"The Court: Well, when I think you have made it, you had better let it go at that.

"Mr. Macdonald: I except to that too, because I represent my client.

"The Court: I think you have gone as far as anything in the testimony would warrant.

"Mr. Macdonald: We have things in relation to this matter that we can show, if this was admitted, that would bear this through.

"The Court: I think you have gone as far now, in the examination of this witness, as any testimony, under any condition, would warrant you in doing in relation to the condition of this old man and the girl. I

can't see that any further examination will avail you anything in making a record.

"*Mr. Macdonald:* I take an exception. That is all, Doctor.

"*Mr. Galpin:* That is all, Doctor.

"*The Court:* What the court has said is based entirely upon the line of examination, which I presume would be followed by a similar line.

"*Mr. Macdonald:* Of course, I called this witness out of the order because he had to go away, if your honor please. That is why I called him at this time. Would it be any different if it was after I—

"*The Court:* No, it wouldn't make any difference. Assuming the facts you had in your question, the ruling would be the same.

"*Mr. Macdonald:* I have other testimony of the same character and along the same line to tender, if your honor please. Would the same ruling be made as to that?

"*The Court:* It would be; yes, sir.

"*Mr. Macdonald:* And it would be needless for me to present it?

"*The Court:* It seems to me that—

"*Mr. Macdonald:* I mean as the court looks at it now.

"*The Court:* Yes, sure.

"*Mr. Macdonald:* Because I don't want to take the time to bring in other physicians—

"*The Court:* No.

"*Mr. Macdonald:* —if that would be the ruling.

"*The Court:* Yes, sir.

"*Mr. Macdonald:* Exception."

Defendant gave evidence tending to show that, on the afternoon of July 6th, he was absent from his home, having gone to a hotel some miles distant for the purpose of collecting refuse for his hogs. This testimony received some corroboration from other witnesses sworn on behalf of the defendant. Defendant's tenth request to charge (which was refused) follows:

"The defense has introduced evidence tending to show that, at the time when the offense charged was claimed to have been committed, the defendant was at

another place; that he was not at the place where the offense is supposed to have been committed at the time charged; and I charge you that, if there is any reasonable doubt in your minds as to whether the defendant was at some other place at the time the offense charged is claimed to have been committed, you should give this defendant the benefit of any such doubt and acquit him."

Without mentioning the claim of an alibi on the part of the defendant, the court charged the jury as follows:

"It is charged that 'on, to wit, the 8th day of July, 1914, at the township of Norton, in the county of Muskegon aforesaid, in and upon Ida Hopper, a female child under the age of 16 years, to wit, of the age of 14 years, Lafayette R. Coston feloniously did make an assult and her the said Ida Hopper then and there feloniously did unlawfully and carnally know and abuse.' You will notice that in the information it is charged that upon the 8th day— There has some proof been put in here tending to fix the offense, perhaps, on the 6th day, or perhaps from the proof here you may not be quite well satisfied in your mind as to what the exact day was. The exact date is immaterial. The question is: Did this man make an assault upon this girl and did he know her carnally, and is she under the age of 16? Those are the matters contained in the principal charge."

BROOKE, C. J. (*after stating the facts*). There are some 90 assignments of error, only a few of which we will notice. The first 4 assignments relate to the ruling of the court permitting the complaining witness to give her reasons why she had not told her parents of the alleged assault upon her. The ruling was proper. *People* v. *Marrs*, 125 Mich. 376 (84 N. W. 284), and cases there cited.

The fifth assignment of error refers to the ruling of the court permitting the complaining witness to testify to previous acts of sexual intercourse between herself and defendant. No error was committed. The rule

that previous acts of familiarity between the parties may be shown has obtained in this State at least from the time of the decision in the case of *People* v. *Jenness*, 5 Mich. 305.

Error is next assigned upon the ruling of the court permitting the witness Anna, who had testified to witnessing previous acts of sexual intercourse between the defendant and her sister Ida, to explain why she had not told her father and mother of the occurrences. We are of opinion that this was an erroneous ruling. The rule permitting the complaining witness to give her reasons for not reporting the commission of the offense to her parents should, we think, not be extended. 33 Cyc. p. 1460.

Error is assigned upon the admission of the following questions and answers in the examination of Anna Hopper, the people's witness:

"*Q.* Were you ever in the coal bin there with Ida prior to last April, in her presence, and with Mr. Coston there, that you had an act of intercourse with Mr. Coston?

"*A.* Yes, sir.

"*Q.* More than once?

"*A.* Yes, sir."

The record discloses that this witness was 16 years of age on the 7th day of April, 1914. The acts of intercourse, therefore, to which she was permitted to testify, occurred at a time when she was under 16 years of age, the statutory age of consent. We are of opinion that the admission of this testimony was clearly erroneous and highly prejudicial. If true, it proved defendant guilty of a distinct and independent crime with which he was not charged in the information. It does not come within the rule announced in the case of *People* v. *Seaman,* 107 Mich. 348 (65 N. W. 203, 61 Am. St. Rep. 326), and kindred cases, where distinct and independent felonies may be shown where a felo-

nious intent is an essential ingredient of the offense charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or the result is claimed to have followed an act lawfully done for a legitimate purpose, or there is room for such an inference. The claim of the prosecution that such evidence was admissible and necessary in order to explain why the witness Anna Hopper had not related to her parents the alleged occurrences is in our opinion untenable. Her testimony as to what she saw touching the familiarity of the defendant with the complaining witness prior to the commission of the alleged offense was admissible. Her reasons (which included her own alleged sexual intercourse with the defendant) why she did not disclose her sister's delinquency to her parents were inadmissible.

We are of opinion that the questions asked the expert witness should have been answered. It is true that the question contained some alleged facts not at that time appearing in the testimony, but the colloquy between the court and counsel indicates that counsel expected to supply this deficiency of facts, but was advised by the court that it would be unnecessary to do so, and that the ruling would be the same. *People* v. *Sessions,* 58 Mich. 594, at page 599 (26 N. W. 291). We think it can hardly be said that the ordinary layman is as well prepared to judge of the ability to perform the sexual act possessed by a man of the age of the defendant and suffering from such physical disabilities as the defendant possessed at the time of the commission of the alleged offense. We think, too, that the fullest latitude should have been permitted in the examination of the defendant touching his capacity to perform the sexual act under the circumstances related by the complaining witness.

While it is true that it is unnecessary to charge in the information the exact date upon which the offense

was alleged to have been committed, it is equally true that, having by the testimony fixed the date of the offense as having occurred upon a day certain, the defendant could meet the charge by showing that at the time he was not present, and therefore could not have committed the offense as charged. We are of opinion that the tenth request to charge should have been given, and that error was committed in its refusal.

The assignments of error based upon the cross-examination of the defendant relative to his payment of $1,000 to the mother of the complaining witness are without merit. He himself had testified on direct examination to the fact that a settlement (money) had been demanded of him. Having given this testimony, the door was open to the prosecution to inquire into all the facts and circumstances relating to the transaction.

We find it unnecessary to consider the many other assignments of error. The judgment is reversed, and a new trial ordered.

KUHN, STONE, OSTRANDER, BIRD and STEERE, JJ., concurred. MOORE, J., did not sit.

The late Justice MCALVAY took no part in this decision.