## PEOPLE v SABIN

Docket No. 187226. Submitted January 22, 1997, at Lansing. Decided May 16, 1997, at 9:20 A.M.

James A. Sabin was convicted by a jury in the Kalamazoo Circuit Court, Philip D. Schaefer, J., of first-degree criminal sexual conduct involving his minor daughter. The court then found the defendant to be a second-offense habitual offender and sentenced him to life imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. The prosecution's failure to specify the exact date of the offense did not constitute manifest injustice.

2. The trial court erred in admitting testimony by a stepdaugher of the defendant that the defendant had committed uncharged acts of sexual misconduct against the stepdaughter.

3. The trial court erred in overruling the defendant's objection to testimony that implied that the defendant was on parole at the time of the alleged offense.

4. The cumulative errors were not harmless. The defendant must be given a new trial.

Reversed and remanded.

1. CRIMINAL LAW — INDICTMENT AND INFORMATION — TIME OF OFFENSE — CRIMINAL SEXUAL CONDUCT.

A felony information need only state the time of an offense "as near as may be"; factors properly considered in determining whether the failure to list a specific offense date denied a defendant due process of law are the nature of the crime charged, the victim's ability to specify a date, the prosecutor's efforts to pinpoint a date, and the prejudice to the defendant in preparing a defense; temporal variances are not fatal unless time is of the essence of the offense; time usually is not of the essence or a material element in criminal sexual conduct cases, especially those involving children (MCL 750.520b[1][b], 767.45[1][b]; MSA 28.788[2][1][b], 28.985[1][b]).

2. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS.

Evidence of other crimes, wrongs, or acts is admissible if such evidence is offered for a proper purpose rather than to prove the defendant's character or propensity to commit the crime at issue, is

relevant to an issue or fact of consequence at trial, and is sufficiently probative to prevail under the balancing test of MRE 403 (MRE 404[b]).

3. CRIMINAL LAW — APPEAL — NONCONSTITUTIONAL VIOLATIONS.

Certain constitutional violations require automatic reversal while other constitutional violations are measured by the standard that requires a court to be convinced beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained; a defendant must show a reasonable probability that a nonconstitutional violation affected the outcome of the trial in order for the violation to warrant reversal.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Judith B. Ketchum*, Assistant Prosecuting Attorney, for the people.

*Martin J. Beres*, for the defendant on appeal.

Before: GRIFFIN, P.J., and MCDONALD and C. W. JOHNSON*, JJ.

GRIFFIN, P.J. Following a jury trial, defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), and sentenced as an habitual offender, second offense, MCL 769.10; MSA 28.1082, to life imprisonment. He appeals as of right. We reverse and remand for a new trial. For the reasons stated in sections II, III, and IV, we hold that defendant was denied his right to a fair trial.

I

Defendant first contends that he was denied due process of law because the felony information failed to list a specific offense date. However, defendant neither objected to the information nor moved for its

---

* Circuit judge, sitting on the Court of Appeals by assignment.

amendment before the trial court. Therefore, the issue is unpreserved and we review it only for the existence of manifest injustice. MCL 767.76; MSA 28.1016; *People v Yarger*, 193 Mich App 532, 536; 485 NW2d 119 (1992); *People v Covington*, 132 Mich App 79, 86; 346 NW2d 903 (1984).

"An information need only state the time of an offense 'as near as may be.' MCL 767.45(2); MSA 28.985(2) [now MCL 767.45(1)(b); MSA 28.985(1)(b)]." *People v Naugle*, 152 Mich App 227, 233; 393 NW2d 592 (1986). In determining whether the failure to pinpoint the date of the offense denied defendant due process of law, we consider: "(1) the nature of the crime charged; (2) the victim's ability to specify a date; (3) the prosecutor's efforts to pinpoint a date; and (4) the prejudice to the defendant in preparing a defense." *Id.* at 233-234. Temporal variances are not fatal unless time is of the essence of the offense. *People v Stricklin*, 162 Mich App 623, 634; 413 NW2d 457 (1987). In criminal sexual conduct cases, especially those involving children, time is not usually of the essence or a material element. *Id.*

In the present case, the prosecutor diligently attempted to pinpoint the date of the alleged criminal sexual conduct. However, the youthful victim could not recall the specific offense date. The record does not sustain defendant's claim that the time of the offense was essential to the alleged crime. Thus, defendant has not established that he was prejudiced by the prosecution's failure to establish an exact offense date. Under these circumstances, we conclude that the prosecution's failure to specify the exact offense date does not constitute manifest injustice.

II

Next, defendant claims that the trial court denied him a fair trial by overruling his objection to testimony that he allegedly had committed uncharged acts of sexual misconduct against a stepdaughter. We agree. In accordance with *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), evidence of other crimes, wrongs, or acts is admissible pursuant to MRE 404(b) if such evidence is (1) offered for a proper purpose rather than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to prevail under the balancing test of MRE 403. MRE 404(b) is consistent with an inclusionary, not exclusionary, theory of admissibility. *VanderVliet, supra* at 64-65.

In *People v DerMartzex*, 390 Mich 410; 213 NW2d 97 (1973), the Supreme Court held that evidence of other sexual acts between a defendant and his victim may be admissible if the defendant and the victim live in the same household and if, without such evidence, the victim's testimony would seem incredible.[1] See also *People v Puroll*, 195 Mich App 170, 171; 489 NW2d 159 (1992); *People v Dreyer*, 177 Mich App 735, 737-738; 442 NW2d 764 (1989). However, in *People v Jones*, 417 Mich 285; 335 NW2d 465 (1983), the Court declined to extend *DerMartzex* to sexual acts between a defendant and household members other

---

[1] Because we find *DerMartzex* to be inapplicable, we assume, but do not decide, that its holding survives the *VanderVliet* "clarified standard" for MRE 404(b) admissibility. Although *DerMartzex* was decided before the promulgation of the Michigan Rules of Evidence and is based on common-law principles, it has been routinely followed and was discussed with approval in *People v Engelman*, 434 Mich 204, 222; 453 NW2d 656 (1990).

than the complainant. In refusing to extend the *DerMartzex* rationale, our Supreme Court stated:

> In *People v Coston*, 187 Mich 538, 546; 153 NW 831 (1915), . . . we rejected as "untenable" the argument that the complainant's sister could testify to an act of sexual intercourse between her and the defendant. In *People v Dean*, 253 Mich 434, 435; 235 NW 211 (1931), we distinguished between "previous acts of misconduct between the same parties" and the defendant's similar acts with others. We believe this distinction is sound. [*Jones, supra* at 289.]

See also *People v Engelman*, 434 Mich 204, 222; 453 NW2d 656 (1990); *People v Ross*, 145 Mich App 483, 488; 378 NW2d 517 (1985).

In the present case, the victim testified that when she was thirteen and home from school, her father (defendant) took off his shirt, locked the door, unplugged the telephone, held her down, and forcibly inserted his penis into her vagina for approximately ten minutes. The victim testified that defendant told her that, if she told anyone about this incident, her mother would be angry at her for breaking up the family again. Thereafter, over defendant's objection, defendant's stepdaughter testified that defendant performed acts of oral sex on her from the time she was six years old until the time she turned fourteen. This witness testified that defendant told her that he would get in trouble and the family would break up if she told anyone about the sexual abuse. These prior alleged acts of abuse ended more than ten years before the trial and did not result in a charge or conviction.

The trial court admitted the testimony concerning these other acts on the basis that "the evidence tends to show that the defendant has committed other

wrongful acts involving a child, or a juvenile, who was a member of the same household, which is the exact situation we have in the allegations of this trial." We read the trial court's ruling as allowing the admission of this evidence for the purpose of establishing defendant's propensity to sexually abuse his children.

In *Jones, supra,* our Supreme Court reversed the defendant's conviction on the ground that error requiring reversal occurred as a result of the erroneous admission of testimony of the victim's sister concerning other acts. This evidence was held to be inadmissible for the purposes of bolstering the victim's credibility or overcoming the natural aversion the jury may have to believing that a father could sexually molest his own daughters.

In the present case, because evidence of other acts is not admissible to prove defendant's propensity to commit the crime, MRE 404(b); *VanderVliet, supra; People v Ullah,* 216 Mich App 669; 550 NW2d 568 (1996), evidence of defendant's alleged prior incestuous pedophilia involving a stepdaughter, without more, may not be used to establish the likelihood that defendant sexually abused the complainant. *Jones, supra; People v Starr,* 217 Mich App 646; 553 NW2d 25 (1996).

We are not persuaded by the prosecutor's argument that the other-acts evidence was admissible to prove defendant's common scheme, plan, or system. Typically, common-scheme evidence is admissible only where the defendant commits a series of crimes in a unique, regular, or regimented manner. See, e.g., *People v Lee,* 212 Mich App 228, 245-246; 537 NW2d 233 (1995); *People v Miller (On Remand),* 186 Mich App

660, 664; 465 NW2d 47 (1991). In the present case, the only similarity in the conduct involved in the alleged incidents was that defendant told each alleged victim that telling anyone about the incident(s) would break up the family. There is little physical similarity between the repeated acts of oral molestation described by the victim's stepsister and the violent, forcible vaginal rape alleged by the victim. Nor does the testimony indicate that defendant committed the acts in the same room or had some unique, consistent pattern or scheme in approaching, overcoming, or treating his victims. Compare *id.* Defendant's alleged threat to each alleged victim not to tell or risk breaking up the family is relatively common in incestuous relationships. Additionally, the prejudicial effect of this other-acts testimony greatly outweighed its probative value to prove anything other than defendant's propensity to sexually abuse his daughters. MRE 403; *Starr, supra; Ullah, supra* at 673-675.

III

Defendant also argues that the trial court committed error requiring reversal by overruling his objection to testimony that implied that defendant was on parole at the time of the alleged offense. Again, we agree.

MRE 403 provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996); *VanderVliet, supra* at 75. In *Sclafani v Peter S*

*Cusimano, Inc,* 130 Mich App 728, 735-736; 344 NW2d 347 (1983), this Court defined "unfair prejudice":

> "Unfair prejudice" does not mean "damaging." *Bradbury v Ford Motor Co,* 123 Mich App 179, 185; 333 NW2d 214 (1983). Any relevant testimony will be damaging to some extent. We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. Unfairness might not exist where, for instance, the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 as we have defined this term but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted.

Over defendant's objection, the trial court admitted into evidence testimony of the victim's mother that after a ten-year absence, defendant returned to the home in contravention of an "agency order" prohibiting him from having any physical contact with children. During trial, the prosecutor repeatedly referenced this testimony. For example, the prosecutor asked the victim whether "someone" may get in trouble if anyone knew defendant was visiting the family. In addition, during closing argument and rebuttal, the prosecutor referred to the agency order

while arguing that the jury should believe the victim. The trial court did not issue a cautionary instruction, although no request was made.

We hold that the unfair prejudice emanating from this evidence far outweighed its probative value. MRE 403; *VanderVliet, supra.* In addition, evidence of the "agency order" and its violation is likely to have mislead the jury and confused the issues. *Id.* The circumstances of this case are analogous to the misuse of evidence of prior convictions, *People v Allen,* 429 Mich 558, 581; 420 NW2d 499 (1988); *People v Robinson,* 417 Mich 661, 664-665; 340 NW2d 631 (1983). Although the word "parole" was not mentioned at trial, the jury was clearly informed that defendant had been separated from his family for ten years and that a "state agency" had determined that defendant posed a danger to his own children. It is most likely that the jury connected this evidence with the testimony that defendant allegedly molested his stepdaughter and inferred that defendant had already been imprisoned for acts of incestuous pedophilia. In either case, evidence regarding the agency order seriously prejudiced defendant by informing the jury that defendant could not be trusted near his own children.

We are not persuaded that the marginal relevance, if any, of explaining the victim's two-week delay in reporting the incident justifies the admission of this highly prejudicial testimony. At trial, the reason for the delay was not at issue. Defense counsel did not argue or imply that the delay affected the victim's credibility. While *VanderVliet* instructs us that a general denial places all the elements of the crime presumptively at issue, the proffered evidence must still be relevant and material. *VanderVliet, supra* at 78-79.

Here, the prejudicial evidence was relevant, if at all, to a collateral matter. It was not probative with regard to any genuine issue of material fact. See, generally, *People v Mills*, 450 Mich 61, 66-80; 537 NW2d 909 (1995).

Finally, evidence that defendant was prohibited from visiting his children was not necessary to explain defendant's alleged threat that the family would be separated if the victim convincingly told authorities that her father had raped her. If the police believed that the victim had been raped, the family would have been separated irrespective of the terms of defendant's parole.

IV

After a thorough review, we conclude that the cumulative errors at trial were not harmless. Defendant was entitled to a fair trial but did not receive one. A new trial is warranted.

We apply and adopt the harmless-error analysis and standards set forth in *People v Hall*, 435 Mich 599, 609, n 8; 460 NW2d 520 (1990), quoting with approval, in pertinent part, *People v Johnson*, 427 Mich 98, 115, n 14; 398 NW2d 219 (1986) (opinion by BOYLE, J.):

> "Certain constitutional violations require automatic reversal. See, e.g., *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (denial of counsel at trial). Other constitutional violations are measured by the standard that requires a court to be convinced 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' *Chapman v California*, 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967) (commenting on defendant's failure to testify at trial could be harmless error); *Rose v Clark*, 478 US [570]; 106 S Ct 3101; 92 L Ed 2d 460 (1986) (jury instruction shifting the burden of proof to the defend-

ant can be harmless error). Nonconstitutional violations, such as that alleged in the instant case, are measured by a third standard in the federal system: The defendant must show a reasonable probability that the error affected the outcome of the trial. See *United States v Mechanik*, 475 US 66; 106 S Ct 938; 89 L Ed 2d 50 (1986) (no reversal for grand jury error unless the error affected the outcome of the trial)."

At trial, there was little or no physical evidence corroborating the victim's testimony. Because defendant denied the sexual conduct, credibility and character became pivotal issues. By introducing evidence that defendant allegedly sexually molested his stepdaughter, the prosecutor in effect attacked the defendant's character and his propensity to commit the crime while bolstering the credibility of the victim. Further, evidence that defendant had violated the conditions of his "agency order" by having physical contact with his daughters was equivalent to advising the jury of a prior, inadmissible conviction. Under these circumstances, we conclude that there is " 'a reasonable probability that the [erroneously admitted evidence] affected the outcome of the trial.' " *People v Hubbard*, 209 Mich App 234, 243; 530 NW2d 130 (1995), quoting with approval *Hall, supra* at 609, n 8. See also *People v Mateo*, 453 Mich 203; 551 NW2d 891 (1996),[2] and *People v Mosko*, 441 Mich 496, 502-503;

---

[2] Although it is clear that nonconstitutional errors are not to be reviewed for harmless error by the "beyond a reasonable doubt" standard of *Chapman v California, supra*, our Supreme Court has not decided on an appropriate test. However, in *Hubbard, supra* at 243, this Court applied the standard articulated in *Johnson, supra* (opinion by BOYLE, J.), and *Hall, supra*, of deciding that nonconstitutional errors are harmless unless the defendant sustains his burden of establishing "a reasonable probability that the error affected the outcome of the trial."

495 NW2d 534 (1992). For these reasons, we hold that the nonconstitutional errors were not harmless.

In view of our resolution of the preceding issues, we need not resolve defendant's remaining claims on appeal.

Reversed and remanded for a new trial.