# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW CHARLES PRUITT,

        Defendant-Appellant.

UNPUBLISHED
February 3, 2015

No.  318158
Wayne Circuit Court
LC No.  13-002655-FC

Before:  MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals his jury trial conviction of second-degree criminal sexual conduct (CSC) pursuant to MCL 750.520c(1)(a).  For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The state of Illinois extradited defendant to Michigan in 2013, to face trial for molesting his ex-girlfriend's daughter in 2002 and 2003.[1]  The prosecution charged him with five counts of criminal sexual conduct: four in the first degree under MCL 750.520b(1)(a), and one in the second degree, under MCL 750.520c(1)(a).[2]  Defendant denied the allegations and stated his innocence.

As part of his defense, defendant sought to call psychologist Dr. Catherine Okla as an expert witness under MRE 702.  Among other things, Okla would testify to the importance of using proper interviewing techniques with child molestation victims, the victim's delayed disclosure of the molestation, the nature of memory, and the behavior of typical sex offenders. Defendant asserted that Okla's testimony was necessary to help the jury understand: (1) the

---

[1] LR, the victim, first reported defendant's molestation of her to the Lincoln Park Police Department in August 2005.  Though the Wayne County Prosecutor issued a warrant for defendant's arrest in 2005, the police, for unexplained reasons, did not arrest defendant until 2013.  Defendant had moved to Illinois in the intervening years.

[2] The information originally included six counts of CSC, three in the first degree and three in the second degree.

alleged failure of the police to employ proper interviewing protocols during their 2005 interview of the victim; (2) his argument that the victim and other witnesses possessed inaccurate memories; (3) his claim that delayed disclosure of abuse was uncommon; (4) his assertion that child molesters exhibit certain common behaviors which he does not possess. The prosecution moved to preclude her testimony, and argued that Okla's proposed testimony would not help the jury determine defendant's guilt or innocence, and would usurp the jury's role in assessing the credibility of the victim and other witnesses. In the alternative, the prosecution requested a *Daubert*[3] hearing to assess Okla's testimony and qualifications.

The trial court, after holding arguments on the matter,[4] granted the prosecution's motion to preclude Okla's testimony. The court stated that her testimony would be unreliable, unhelpful to the jury, and usurp the jury's role as the trier of fact.[5] The trial proceeded, and the jury found defendant guilty of one count of second-degree CSC under MCL 750.520c(1)(a).

On appeal, defendant argues that the trial court abused its discretion when it precluded Okla from testifying on proper interviewing techniques for child molestation victims, the victim's delayed disclosure of the molestation, the nature of memory, and the behavior of typical sex offenders. In so doing, defendant says that the trial court prevented him from presenting a defense. He also claims that the state violated his right to due process by delaying his arrest for over seven years.

## II. STANDARD OF REVIEW

A trial court's decision to exclude expert testimony pursuant to MRE 702 is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217. A close call on an evidentiary question ordinarily cannot be an abuse of discretion because a trial court's assessment of the evidentiary issues is accorded great deference. *People v Cress*, 468 Mich 678, 690-691; 664 NW2d 174 (2003).

Because defendant did not explicitly raise the issue of whether the state's delay in arresting him denied him of due process, his claim on appeal is unpreserved. *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Unpreserved issues of constitutional

---

[3] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[4] Defendant responded to the prosecution's motion with its own series of arguments for Okla's admission recounted above. He also submitted an offer of proof, by attaching Okla's curriculum vitae, and a letter from defendant's trial counsel to the prosecutor that outlined the specific testimony defendant intended to elicit from Okla. See MRE 103(a).

[5] Specifically, the trial court stated that it was "not satisfied that [Okla's testimony] would assist the trier of fact. . . . it's just, in this court's view, not reliable. It gets into what the jury's job is and would confuse the issues in [the court's] view."

law are reviewed for plain error that affected a party's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## III. ANALYSIS

## A. EXPERT TESTIMONY

## 1. LEGAL STANDARDS

Under MRE 702, a "court evaluating proposed expert testimony must ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012) (opinion of MARY BETH KELLY, J.). The "threshold inquiry— whether the proposed expert testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue'—is also not satisfied if the proffered testimony is not relevant or does not involve a matter that is beyond the common understanding of the average juror." *Id*. at 121, quoting MRE 702.

To determine whether the average juror needs expert interpretation to understand a fact at issue, "we apply common sense to determine whether an untrained laymen could determine intelligently and to the best possible degree the issue involved without the aid of experts." *People v Ackerman*, 257 Mich App 434, 445; 669 NW2d 818 (2003). If an expert does testify in a child molestation case, he "(1) . . . may not testify that the sexual abuse occurred, (2) . . . may not vouch for the veracity of a victim, and (3) . . . may not testify whether the defendant is guilty." *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). The expert may also not usurp the jury's role as a fact finder. See *Charles Reinhart Co v Winiemko*, 444 Mich 579, 601; 513 NW2d 773 (1994) (italics original) ("[t]o maintain the traditional role of the jury, the jury must remain the factfinder; *a jury may determine what happened, how, and when . . .*").

A trial court's abuse of discretion in failing to admit proposed expert testimony is reversed only where the party proposing the testimony demonstrates that it is more likely than not "a different outcome would have resulted without the [abuse of discretion]." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

Here, the trial court, in precluding Okla's testimony, indicated that it did so in part because her testimony would be both unhelpful to the jury in understanding a fact at issue and usurp the jury's role.[6] See *Kowalski*, 492 Mich at 120. Again, defendant argues that the trial court abused its discretion when it precluded Okla's testimony, because the testimony was necessary to help the jury understand: (1) the alleged failure of the police to employ certain interviewing techniques during their 2005 interview of the victim; (2) his claim that delayed disclosure of abuse was uncommon; (3) his argument that the victim and other witnesses

---

[6] See n 5, supra.

possessed inaccurate memories; (4) his assertion that child molesters exhibit certain common behaviors which he does not possess. We address each in turn.

## 2. 2005 VICTIM INTERVIEW

According to defendant, Okla would have testified to the supposedly improper way in which the police interviewed the victim in 2005, when the victim told the police of defendant's alleged molestation of her. Specifically, defendant states that the police, in their interview, "never explored any other reason that [the victim] might accuse [defendant] of sexual assault," and that Okla's testimony would have revealed how "the police never properly scrutinized [the victim's] claims in 2005 . . . . and left open the possibility that she made 'false or inaccurate statements' during her interview."

As the trial court properly noted, whether the police did or did not ask such questions during the 2005 interview is not relevant to the question in this case: whether defendant molested the victim.[7] It is the role of the jury—not the police—to determine whether a victim's allegations are "false or inaccurate statements." *Charles Reinhart Co*, 444 Mich at 601. Nor would Okla's testimony on how the police "failed" to scrutinize the victim's claims in 2005 have "involve[d] a matter that is beyond the common understanding of the average juror." *Kowalski*, 492 Mich at 121. In fact, Okla would have spoken to a matter of "common sense": people, including alleged victims of sexual assault, sometimes lie. *Ackerman*, 257 Mich App at 445. Because the victim testified at trial, the jury was able to asses for itself whether her allegations against defendant were "false or inaccurate"—or true and accurate.

In any event, even if the trial court had abused its discretion in precluding Okla's testimony on the 2005 interview, defendant cannot establish that the outcome of his trial would have been different had Okla testified. *Lukity*, 460 Mich at 495. His trial attorney explicitly argued that the police failed to comply with proper interviewing procedure in the 2005 interview. During cross-examination of the victim and at other points during the trial, defendant's counsel also explained that the victim might have had reasons to falsely accuse defendant—specifically,

---

[7] Police officers are required to employ special interviewing techniques for children. MCL 722.628(6). The Child Protection Law defines children as "a person under 18 years of age." MCL 722.622(e). However, the rules of evidence related to the use of statements made in forensic interviews apply to witnesses that are under 16 years of age. MCL 600.2163a(e)(*i*). The State of Michigan's Forensic Interviewing Protocol does not indicate at what age of adolescence the interviewing protocol need not be employed. See generally State of Michigan Governor's Task Force on Child Abuse and Neglect and Department of Human Services, *Forensic Interviewing Protocol* (3d ed) http://www.michigan.gov/documents/dhs/DHS-PUB-0779_211637_7.pdf (accessed January 26, 2015). It does, however, provide interviewing strategies for hypothetical children, up to age 14. *Id*. at 27.

At trial, in opposition to defendant's argument, the prosecution implied that because the victim was 15 years old when she reported the molestation, it was unnecessary for the police to use the above procedures when they interviewed her.

the possibility that she had contracted a sexually transmitted disease from another sexual partner at age 15, and wanted to provide an alternative explanation for her family members and sexual partners.[8] The jury accordingly heard the testimony that Okla was supposedly going to provide, and it is not likely "a different outcome would have resulted" had she been allowed to testify on the 2005 interview. *Lukity*, 460 Mich at 495.

### 3. DELAYED DISCLOSURE

Defendant claims that Okla would have testified on disclosure patterns in sexual abuse cases, and that her testimony would have helped the jury understand that delayed disclosure is rare. In his brief on appeal, defendant says that this would have placed the victim's testimony in a new light, because she gave few reasons for why she waited two years to accuse defendant of molesting her.

In essence, defendant thus admits that Okla's testimony on delayed disclosure would have been used to challenge the veracity of the victim's allegations—a purpose for which expert testimony is not permitted to be used.[9] Therefore, the trial court did not abuse its discretion by precluding Okla from testifying on the victim's delayed disclosure of the molestation.

### 4. ACCURACY OF WITNESS MEMORY

Defendant asserts that Okla's testimony on memory would have led the jury to understand that "witnesses sometimes have inaccurate memories of specific events, and would have given them tools to use in evaluating the memories of [the prosecution's witnesses]." In turn, defendant says that this would have led the jury to question the truthfulness of the victim and two other witnesses.

Again, this proposed testimony speaks to a matter with which every juror has experience, and does not need an expert to explain: inaccurate memories. See *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999) (finding trial counsel not ineffective for not calling an

---

[8] In its examination of the victim, the prosecution also asked her to explain inconsistencies in her recounting of events at the preliminary examination—which further offered the jury an opportunity to assess the credibility of the victim and the truthfulness of her allegations against defendant.

[9] See *Peterson*, 450 Mich at 376 (describing two expert witnesses who testified for the prosecution about the veracity of victim allegations in child sex abuse cases: "Certainly neither witness stated that the child victim was telling the truth. However, the risk here goes beyond such a direct reference. Indeed, as we have cautioned before, the jury in these credibility contests is looking 'to hang its hat' on the testimony of witnesses it views as impartial. Such references to truthfulness as go beyond that which is allowed under MRE 702").

See also *Peterson*, 450 Mich at 373 (explicitly stating that the *prosecution*—without mentioning the defendant—"may present evidence, if relevant and helpful, to generally explain the common postincident behavior of the children who are victims of sexual abuse").

expert witness on memory and perception: "[t]rial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate").[10] And, as noted, it is the jury's role to make determinations about the veracity and accuracy of witnesses who testify before it. *Charles Reinhart Co*, 444 Mich at 601. The trial court thus properly precluded Okla's testimony on memory.

### 5. SEX OFFENDER BEHAVIOR

Because "most of our citizen-jurors lack direct knowledge or experience with the typical forms of conduct engaged in by adults who sexually abuse children," expert testimony on "common practices of child molesters" may be admissible under MRE 702. *Ackerman*, 257 Mich App at 444-445. However, our Court has held that "sex-offender profiles" created through psychological testing of a defendant, and used to determine whether a defendant's profile matches that of a generic sex offender, are unreliable, do not assist the jury and usurp its role. *People v Dobek*, 274 Mich App 58, 94-97; 732 NW2d 546 (2007). Such profiles are accordingly not admissible under MRE 702. *Id.*

Here, defendant says that Okla's testimony would have discussed the behavior of a generic sex offender—*not* defendant's behavior—and that this would have assisted the jury to determine whether defendant's behavior was consistent with that of a generic sex offender. As such, defendant argues that the trial court abused its discretion when it precluded Okla's testimony on this subject.

Insofar as Okla would have only testified to typical behaviors of generic sex offenders— and said nothing about *defendant*'s behavior[11]—her testimony might have been permissible under MRE 702, if Okla is indeed an "expert qualified in [the typical behaviors of generic sex offenders]" and her testimony would have been "based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *Kowalski*, 492 Mich at 120. This is because such testimony would have assisted the jury to make its own conclusions, based

---

[10] Defendant cites *Kowalski* in support of his argument that Okla should have been allowed to testify on inaccurate memories, but that case involved an expert who testified as to psychological factors that might lead to a false confession—something with which most jurors do not have experience. See *Kowalski*, 492 Mich at 129. By contrast, all jurors have experience with inaccurate memory, and do not need an expert to explain to them that some witness memories might be inaccurate.

[11] If Okla testified as to defendant's behavior—i.e., whether defendant's behavior matched that of a generic sex offender—her testimony would have amounted to a "sex-offender profile" and thus been inadmissible under MRE 702. *Dobek*, 274 Mich App at 94-97.

on the other evidence,[12] whether defendant's behaviors were consistent with those of a generic sex offender. *Ackerman*, 257 Mich App at 445.

Accordingly, if Okla is indeed an "expert qualified in [the typical behaviors of generic sex offenders]" and her testimony would have been "based on reliable data, principles, and methodologies that are applied reliably to the facts of the case," the trial court abused its discretion in precluding her statements on the typical behaviors of generic sex offenders.

However, its error in so doing was harmless, because defendant is unable to show that the outcome of his trial would have been different had Okla testified. See *Lukity*, 460 Mich at 495. By definition, not every sex offender will behave in the same fashion as a "generic sex offender." It is accordingly not a necessary conclusion that Okla's testimony on generic sex offenders would have caused the jury to return a different verdict. The prosecution also presented ample evidence that defendant *was* a sex offender: the victim stated, in graphic detail, that defendant molested her once to twice per week from August 2002 to April 2003; and other witnesses testified that the victim told them the same. The jury undoubtedly based its verdict on this testimony, and did not find defendant's evidence to the contrary convincing. It is accordingly not likely "a different outcome would have resulted" had Okla been allowed to testify on the behavior of generic sex offenders. *Lukity*, 460 Mich at 495.

## B. PRESENTATION OF A DEFENSE

The right to present a defense is "not unlimited and is subject to reasonable restrictions." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). Where MRE 702 is properly applied, the excluded testimony cannot establish a constitutional violation of the right to present a defense. See *Kowalski*, 492 Mich at 141.

Here, as noted, the trial court properly applied MRE 702 to preclude all of Okla's testimony, except for the testimony she would have given on the behavior of a generic sex offender, which was a harmless error. Moreover, the trial court's preclusion of Okla testifying did not preclude defendant's counsel from introducing the evidence on which Okla would have testified—information on the behavior of a generic sex offender. And again, defendant presented ample testimony that he was not a sex offender. Defense counsel stressed that the prosecution's witnesses never saw defendant engaged in sexual activity with the victim. Defendant's trial attorney also presented four witnesses that testified to defendant's behaviors, and to his normal behavior toward children. Accordingly, the trial court's decision to preclude Okla's testimony under MRE 702 did not deny defendant the right to present a defense.

## C. DUE PROCESS

"A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process."

---

[12] Multiple witnesses, for both the prosecution and defendant, testified to the relationship between victim and defendant, and to defendant's demeanor toward children in general.

*People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014). "Defendant must present evidence of actual and substantial prejudice, not mere speculation." *Id*. Specifically, a defendant must show "that he was meaningfully impaired of his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *People v Adams*, 232 Mich App 128, 134-135; 591 NW2d 44 (1998) (internal citations and quotation omitted).

"Generally, mere delay between the issuance of a complaint and an arrest and arraignment, absent actual and substantial prejudice, is not a denial of due process." *Woolfolk*, 304 Mich App at 456. Moreover, "[a] defendant cannot merely speculate . . . that any delay resulted in lost memories, witnesses, and evidence, even if the delay was an especially long one." *Id*. at 454 (internal citations omitted). "In criminal sexual conduct cases, especially those involving children, time is not usually of the essence or a material element." *People v Sabin*, 223 Mich App 530, 532; 566 NW2d 677 (1997), rev'd on other grounds 463 Mich 43 (2000).

Here, defendant unconvincingly argues that his arrest in 2013 violated his right to due process, because of two specific instances at trial where prosecution witnesses admitted to memory lapses. First, defendant says that the victim's inability to recall the details of when defendant allegedly performed oral sex on her caused him prejudice. But defendant could not have been prejudiced by this gap in the victim's memory, because the jury did not convict him of the charges associated with that allegation.[13]

Second, defendant asserts that he was prejudiced by the victim's inability to recall the specific year in which he allegedly touched her while they sat on a couch together.[14] Again, "[i]n criminal sexual conduct cases, especially those involving children, time is not usually of the essence or a material element." *Sabin*, 223 Mich App at 532. In any event, several witnesses (including the victim) testified that the alleged incident occurred from 2002 to 2003, while complainant was 12 years old. And, as noted, the victim testified that sexual contact between herself and defendant occurred one to two times per week for a period of many weeks. Together, this testimony provided a sufficient timeframe for the jury.[15]

---

[13] If anything, the delay in defendant's arrest benefited him as to this charge—had he been arrested sooner, the victim might have had a clearer memory of the allegation associated with it.

[14] Defendant also points to another witness who could not remember the specific date when she learned about defendant's molestation of the victim, but fails to explain how his defense was hampered by the witness's inability to provide such a specific date. Accordingly, defendant has failed to show that he was "meaningfully impaired of his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Adams*, 232 Mich App at 134-135.

[15] Defendant generally alleges that lapses in witness memory prevented him from adequately defending himself against the charges. But mere speculation of prejudice does not demonstrate "actual and substantial prejudice." *Woolfolk*, 304 Mich App at 454. His argument that the lack of specific dates deprived him of the "chance to develop alibis or find material witnesses to

Accordingly, despite the seven-year gap between the issuance of the warrant and defendant's arrest, defendant's due process rights were not violated because the delay did not cause him prejudice.

Affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

---

testify in his favor" does not show that such witnesses actually would have provided relevant information that was beneficial to his defense. *Id.*