*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BASSAM TAAMNEH,

Defendant-Appellant.

UNPUBLISHED
August 22, 2019

Nos. 342452; 342453
Wayne Circuit Court
LC No.  17-006066-01-FC;
        17-006065-01-FC

Before:  SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

In two consolidated cases, defendant Bassam Taamneh was convicted by a single jury of a total of nine counts of first-degree criminal sexual conduct (CSC-I) and two counts of second-degree criminal sexual conduct (CSC-II) involving his two daughters, VT and ET.[1]  For the three CSC-I convictions pertaining to penile-anal penetration against VT, the trial court imposed sentences of 35 to 50 years' imprisonment.  Defendant received prison terms of 18 to 35 years for the other CSC-I convictions and 10 to 15 years for each of the CSC-II convictions.  All the sentences are to be served concurrently.  On appeal, defendant challenges his convictions and sentences.  For the reasons stated below, we affirm.

## I. BACKGROUND

According to the prosecution's proofs, on March 19, 2017, defendant's daughter, VT, disclosed to her older sister, ET, that defendant had "molested and raped" her in the past.  ET responded that she had also been sexually assaulted by defendant.  The family was living in Florida at the time, but the alleged assaults occurred in Michigan where they had previously

---

[1] Docket No. 342452 concerns defendant's convictions for five counts of CSC-I and two counts of CSC-II that took place at or near the family home in Dearborn Heights, Michigan.  Docket No. 324453 pertains to defendant's convictions for four counts of CSC-I that occurred at his parents' home in Redford Township, Michigan.

lived. The sisters then disclosed the abuse to their brother, who decided that they needed to leave the home immediately. Along with their mother, the three siblings went to a hotel and flew to Michigan the next day to stay with a family member. Soon after arriving in Michigan, the four family members went to the Dearborn Heights police department and filed a police report regarding the sexual assaults.

VT was 18 years old at the time of October 2017 trial. VT testified that she lived with her family in Dearborn Heights, Michigan, until moving with the family to Florida three years ago. She said that she was between the ages of four and six the first time that defendant assaulted her. She explained that defendant inserted his fingers into her vagina while they were watching television in defendant's bed. She said that this occurred "multiple times" over a number of years.

VT testified that she was between 8 and 11 years old the first time defendant assaulted her by anal penetration. She stated that defendant took her to her grandparents' house in Redford Township while they were away and anally raped her multiple times over several years. She testified that defendant also anally raped her at the family home in Dearborn Heights while her mother and sister were at the store.

VT testified to numerous specific instances of assault. She described one incident when defendant was digitally penetrating her vagina and then he stopped. She said that she put his hand back on her vagina because she was a child, and she did not know that it was wrong. VT stated that defendant said the Arabic phrase for "shame" to her, and then continued. VT said that when defendant touched her or digitally penetrated her he called it "tickling."

VT said she eventually realized that defendant should not be touching her like that when she took a health and sexual education class in sixth grade. She testified she began telling him to "stop" and "let [her] go" when he tried to touch her. She said she would have to say it multiple times before he would stop. VT testified that she also learned the word masturbation in health class, and when she asked defendant what it meant, he showed her by touching her vagina, but not penetrating her. Another incident occurred when VT was 13 or 14 years old. She said that defendant came into her room and asked her if she wanted him to tickle her. She told him no, and defendant told her that this made him feel sad. VT said she felt bad, so she went and sat by him. She stated that defendant then digitally penetrated her vagina. VT said that nearly every time defendant assaulted her, he told her not to tell anyone because he would go to jail.

Seven of defendant's convictions pertained to VT. He was convicted of three counts of CSC-I for penile-anal penetration, MCL 750.520b(2)(b) (victim under 13 years of age, defendant over 17 years of age). Two of those offenses occurred at the grandparents' home in Redford Township and one happened at the family home in Dearborn Heights. Defendant was also convicted of three CSC-I counts for digital penetration against VT in Dearborn Heights; two of which occurred when VT was under 13 years of age, MCL 750.520b(1)(a), and one took place when she was older than 13 years of age, MCL 750.520b(1)(b) (victim aged 13 to 15 and a relative). Defendant was also convicted of CSC-II for sexual contact against VT that occurred in Dearborn Heights, MCL 750.520c(1)(b) (victim aged 13 to 15 and a relative).

ET was 24 years old at the time of trial. She testified that the abuse began when she was four or five years old. She said that she would sit in defendant's bed, and defendant would digitally penetrate her vagina. She testified that it happened so many times that she could not give an accurate number. ET stated that when she was 9 or 10 years old defendant also digitally penetrated her multiple times at her grandparents' home when the grandparents were on vacation. ET testified that on her 12th birthday defendant picked her up out of her bed while she was sleeping, brought her into his bed, and digitally penetrated her vagina and "humped" her.

ET also described an incident when defendant was teaching her how to drive, when she was 14 or 15 years old. She said she was practicing in a parking lot, and defendant touched her vagina over her clothes and "finger[ed]" her through her clothing. ET told him she "didn't like when he did that and he said it could help you drive better." She believed that was the last time defendant assaulted her.

ET testified she learned at school that defendant should not have been doing this. She expressed to defendant that she hated his behavior by telling him that she did not like it when he "did that." She said defendant told her that it hurt his feelings for her to say that, and he told her not to tell anyone because he could go to jail. ET also stated that defendant would give her "threatening looks," which she said gave her the indication that if she did not do what he wanted then she would be in trouble.

Defendant was convicted of two counts of CSC-I for digitally penetrating ET at the grandparents' home, MCL 750.520b(2)(b) (victim under 13 years of age, defendant over 17 years of age). He was also convicted of CSC-I for digitally penetrating ET on her 12th birthday, MCL 750.520b(1)(a) (victim under 13 years of age), and a count of CSC-II for sexual contact with ET that occurred in Dearborn Heights, MCL 750.520c(1)(b) (victim aged 13 to 15 and a relative).

## II . VOIR DIRE

Defendant first claims on appeal that the trial court erred in precluding him from questioning the prospective jurors regarding whether their view of the case would be affected if defendant chose not to testify. While the better practice would be to allow such questioning, we conclude that the trial court did not abuse its discretion by circumscribing how the attorneys could address this issue with the jury.[2]

Voir dire "should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges." MCR 6.412(C)(1). The importance of probing voir dire is well established. The

---

[2] "The trial court has discretion in both the scope and the conduct of voir dire." *People v Tyburski*, 445 Mich 606, 618-619; 518 NW2d 441 (1994). See also MCR 6.412(C)(1). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

Michigan Supreme Court "has long recognized the importance of a voir dire that allows the court and the parties to discover hidden bias that would render a potential juror incompetent." *People v Tyburksi*, 445 Mich 606, 619; 518 NW2d 441 (1994). And "a trial court may not restrict voir dire in a manner that prevents the development of a factual basis for the exercise of peremptory challenges." *People v Taylor*, 195 Mich App 57, 59; 489 NW2d 99 (1992).

In this case, however, the trial court only restricted voir dire on one issue, and it did not completely foreclose questioning on that matter. The court stated that it would not allow questions to the jury venire such as, "[D]o you want to hear the defendant testify? Are you going to have a problem if he doesn't testify?" After defense counsel objected, the court said that it would allow counsel to inform the prospective jurors that defendant has the constitutional right not to testify and to ask whether they understood that legal principle. Defense counsel did in fact educate the venire that defendant had the right not to testify, and questioned a couple jurors on whether they could follow that principle. For those reasons, we conclude that the trial court's voir dire was sufficiently probing to allow the parties to discover grounds for challenges for cause and to facilitate an intelligent exercise of peremptory challenges.

### III. INFORMATION AND JURY INSTRUCTIONS

Defendant next argues that he was denied his right to notice of the charges against him, and that the jury was not adequately instructed. He also claims that he was denied the effective assistance of counsel for defense counsel's failure to raise these issues a trial. We disagree.[3]

The federal and state constitutions provide a criminal defendant with the right to notice of the nature and cause of the accusations against him. US Const, Amends VI, XIV; Const 1963, art I, § 20. The information must contain "[t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged." MCL 767.45(1)(a). See also MCR 6.112(D) ("The information must set forth the substance of the accusation against the defendant . . . ."). The information must contain "[t]he time of the offense as near as may be." MCL 767.45(1)(b). See also MCR 6.112(D) ("To the extent possible, the information should specify the time and place of the alleged offense."). However, "[n]o variance as to time shall be fatal unless time is of the essence of the offense." MCL 767.45(1)(b). In CSC cases involving children, time is usually not of the essence or an element of the offense. *People v Sabin*, 223 Mich App 530, 532; 566 NW2d 677 (1997), remanded in part on other grounds 459 Mich 924 (1998).

In this case, the prosecutor filed two felony informations, one for each city in which the abuse occurred. Each count identified the complainant and the type of sexual contact involved. Each count also provided approximate years of the allegations. Defendant takes issue with the

---

[3] Defendant did not raise these issues before the trial court, so our review is for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). And, because defendant did not file a motion for new trial or a *Ginther* hearing, our review of the claim of ineffective assistance of counsel is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

large time spans given for some of the offenses. The prosecutor attempted to give as precise a date as possible for the offenses, as shown by the exact date provided for the offense committed on ET's birthday. We also note that most of the offenses allege a time period not greater than a year. However, there were numerous factors that made it difficult to pinpoint the dates of the offenses. The sexual abuse allegedly began when defendant's daughters were as young as four years old and continued for years. The allegations did not come to light until 2017, and the offenses were alleged to have occurred between 2002 and 2013. The lack of a precise date in child CSC cases does not typically deny the defendant due process. See e.g., *Sabin*, 223 Mich App at 532; *People v Clark*, 164 Mich App 224, 232-233; 416 NW2d 390 (1987). Further, defendant does not argue that the time of the offenses was essential in this case, nor does he explain how the lack of exact times prejudiced him in preparing a defense. For those reasons, we conclude that the charges were sufficiently specific to provide defendant notice of the nature and cause of the accusations against him.

Defendant also argues that the jury instructions contained several identically worded charges and put him at risk of being convicted multiple times for the same conduct, thereby violating his protection against double jeopardy. Defendant relies primarily on *Valentine v Konteh*, 395 F3d 626, 628 (CA 6, 2005), in which the Sixth Circuit set aside many of the defendant's convictions in a child CSC case because the indictment set forth "carbon copy," "identically worded" counts with no differentiation between the charges. *Id.* (quotation marks omitted). The court also determined that the lack of specificity in the indictment raised two double jeopardy concerns: the defendant could have been subjected to improper "future prosecutions," and he may have been subjected "to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense." *Id.* at 634-635.

We are not bound by lower federal court decisions. *Truel v Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010). In any event, *Valentine* is inapposite. The charges in this case were not all identically worded. They set forth offenses against two separate victims that occurred at different times, locations and involved different types of sexual contact. Moreover, while the victims testified that the assaults occurred multiple times, they also provided specific instances that corresponded to many of the offenses. We note that there are some duplicate counts, but that is a far cry from *Valentine*, where the defendant was charged with two sets of twenty identical crimes based solely on the child victim's estimates. See *Valentine*, 395 F3d at 628. Accordingly, the due process and double jeopardy concerns identified in *Valentine* are not present in this case.

As for the jury instructions, in final instructions the trial court differentiated for the jury which counts took place in Redford Township and which counts occurred in Dearborn Heights. Unlike the informations, the jury instructions did not contain the estimated dates of the offenses. However, the trial court read the informations to the jury venire, provided the jury with copies of the informations, and referred to the informations during final instructions. We may consider the reading of the information in determining the adequacy of the jury instructions. See *People v American Med Ctrs of Mich, Ltd*, 118 Mich App 135, 151-152; 324 NW2d 782 (1982) ("Where the instructions include a reading of the information and the applicable statutes, they will generally be found to be sufficiently comprehensive."). Whether the informations should have also been read aloud during final instructions is unclear. See *People v Traver*, 502 Mich 23; 917 NW2d 260 (2018). But defendant has not identified any plain error in the trial court's approach

to providing jury instructions in these consolidated cases. Viewing the instructions in their entirety, we conclude that they fairly presented the issues to the jury. See *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

For the reasons discussed above, defendant's claim of ineffective assistance counsel also fails. To show ineffective assistance of counsel, a defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defendant has not established that the informations or the jury instructions were inadequate, and defense counsel is not ineffective for failing to make a futile objection. See *People v Ericksen*, 288 Mich App 188, 201; 793 NW2d 120 (2010). Nor has defendant demonstrated that he was prejudiced by his counsel's decision not to object.

IV. OFFENSE VARIABLES

Defendant also argues that the trial court erred in scoring offense variable (OV) 8, 10, and 19. We find no error.[4]

Defendant first objects to the assessment of 15 points for OV 8. OV 8 deals with victim asportation or captivity. MCL 777.38(1). It directs the trial court to assess 15 points for OV 8 if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Asportation can occur without the use of force against the victim, and it can occur even when the victim voluntarily accompanies the defendant to a place or a situation that presents a greater danger. *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), abrogated in part on other grounds by *People v Barrera*, 500 Mich 14, 17; 892 NW2d 789 (2017). A place of greater danger includes an isolated location where criminal activities might avoid detection. *Id*.

VT and ET both testified that they voluntarily accompanied defendant to their grandparents' house. They stated that their grandparents were out of town when defendant took them there, and he went there to check on the house because it was empty. Both victims testified that, while at the grandparents' house, defendant sexually penetrated them. Because the grandparents' house was empty, it was less likely that defendant's criminal activities would be detected. See *Barrera*, 500 Mich at 21-22 (affirming an assessment of 15 points for OV 8 when the defendant took the victim from the living room to his bedroom to sexually assault her). Therefore, we conclude that the trial court did not err in assessing 15 points for OV 8.

---

[4] "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

Defendant next argues that the trial court erred in assessing 15 points for OV 10. OV 10 deals with exploitation of a vulnerable victim. MCL 777.40(1). It directs the trial court to assess 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization. MCL 777.40(3)(a). Predatory conduct must involve more than "purely opportunistic criminal conduct." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011).

In *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342325); slip op at 5, we upheld an assessment of 15 points for OV 10 on the basis of the defendant's grooming conduct. Grooming encompasses "less intrusive and less highly sexualized forms of sexual touching, done for the purpose of desensitizing the victim to future sexual contact." *People v Steele*, 283 Mich App 472, 491- 492; 769 NW2d 256 (2009). There was evidence of grooming behavior in this case. VT testified that defendant progressed from digital penetration to penile-anal penetration. VT also testified that defendant would digitally penetrate under the guise of "tickling" her. In addition, both victims testified that defendant would make them feel bad if they objected to his conduct. ET also stated that defendant would give her "threatening looks," which indicated to her that she would be in trouble if she did not do what defendant wanted. Moreover, defendant took steps to isolate himself with his daughters before committing some, if not all, of the offenses. See *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015) ("The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct."). For those reasons, we conclude that the trial court did not clearly err in scoring OV 10 at 15 points.

Defendant next argues that the trial court erred in assessing 10 points for OV 19. OV 19 directs the trial court to assess 10 points for OV 19 if "[t]he offender . . . interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).

The trial court scored OV 19 based on defendant's suicide attempts on the day the verdict was to be received. However, by all accounts, the suicide attempts were genuine attempts to end his life and not directed at delaying proceedings, which were in fact not delayed.[5] Accordingly, we conclude that the suicide attempts were not a proper basis to score OV 19.

We also conclude, however, that the scoring of OV 19 was proper on other grounds. We have held that OV 19 may be scored when the defendant "told his victims not to disclose his acts or he would go to jail." *Steele*, 283 Mich App at 492. In this case, both victims testified that defendant made such statements to them. Therefore, we affirm the scoring of OV 19 on this basis.

---

[5] The presentence investigation report informs that defendant took an overdose of prescription medication but was transported to the hospital in time. Upon waking at the hospital, defendant slit his wrists.

Defendant also argues that he was erroneously scored points for either OV 11 or OV 12 under a prior version of the sentencing guidelines. Contrary to defendant's argument, he was sentenced under the current sentencing guidelines. Neither OV 11 nor 12 was scored. Instead, defendant was assessed 50 points for OV 13 because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). Defendant does not argue that OV 13 was improperly scored.

## V. DEPARTURE SENTENCE

Finally, defendant argues that the 35 to 50 year sentence he received for three of the CSC-I convictions was disproportionate and unreasonable. We conclude the imposed sentence does not constitute an abuse of discretion.

We review sentences that depart from the advisory guidelines range for reasonableness. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A sentence is reasonable if it adheres to the principle of proportionality, which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted). Court may consider various factors under the proportionality standard, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at 352-353 (quotation marks and citation omitted).]

The trial court must articulate reasons supporting its decision to impose a sentence outside the guidelines range. *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017). "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 475 (quotation marks and citation omitted).

In departing from the sentencing guidelines and exceeding the mandatory 25-year minimum sentence for three of defendant's CSC-I convictions,[6] the trial court considered a

---

[6] The prosecution sought sentencing under the 25-year mandatory minimum for the three CSC-I convictions involving penile-anal penetration. See MCL 750.520b(2)(b). A sentence in excess of a mandatory minimum sentence is considered a departure sentence. See *People v Wilcox*, 486 Mich 60, 72; 781 NW2d 784 (2010); *People v Payne*, 304 Mich App 667, 672; 850 NW2d 601 (2014).

number of factors. It considered that defendant had sexually abused his daughters over a nearly 20-year period, with many more assaults then the guidelines can take into account. It also noted the escalating nature of the assaults, growing from touching, to digital penetration, to penile-anal penetration. The court properly considered the magnitude of the crimes, which it described as bold, disgusting, and loathsome. The court also noted that defendant repeatedly directed his daughters not to reveal his assaults to anyone, which they did not for many years during which the assaults continued. The court also considered that defendant exercised control over the victims in other ways, stating that his behavior was more like a jealous boyfriend than a father and that the victims remained fearful and joyless many years later.

Defendant argues that the factors identified by the trial court were adequately accounted for by the offense variables, specifically OV 4, 10 and 13.[7] OV 4 was scored at 10 points because a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). We have acknowledged, however, that "[a]lthough OV 4 accounts for psychological injuries suffered by victims, it does not adequately consider the ways in which an offense affects familial relationships, nor does it always account for the unique psychological injuries suffered by individual victims." *People v Anderson*, 298 Mich App 178, 189; 825 NW2d 678 (2012) (citations omitted). That is especially true when the sexual assaults were perpetrated by the victims' father. And, although the trial court scored OV 10 at 15 points for defendant's predatory conduct, the court considered the totality of defendant's actions in deciding to impose a departure sentence. Lastly, while OV 13 accounts for a pattern of "3 or more crimes," in this case the number of assaults was so far beyond three that we conclude it was not fully encompassed by the scoring of OV 13.

In short, in departing upward from the guidelines and imposing a sentence beyond the 25-year mandatory minimum, the trial court properly considered the seriousness of the offenses and surrounding circumstances. A number of the factors identified by the court were not fully accounted for by the sentencing guidelines. On the record before us, the trial court did not abuse its discretion in determining that a 35 to 50 year prison sentence was reasonable.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle

---

[7] Defendant cites OV 12 rather than OV 13. As discussed above, defendant mistakenly believes that he was sentenced under a prior version of the sentencing guidelines.